Wesley **HARRELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–89–00035–CR.

Court of Appeals of Texas, Tyler.

May 17, 1991.

Discretionary Review Overruled June 13, 1991.

Odis R. Hill, Longview, for appellant.

C. Patrice Savage, Longview, for appellee.

BILL BASS, Justice.

Wesley Harrell was convicted of engaging in organized criminal activity. A jury assessed his punishment at fifteen years confinement. We reverse and remand for a new trial.

Harrell was indicted with thirty-two others, the indictment alleging that Harrell par-

ticipated in a conspiracy to deliver cocaine. The indictment grew out of an extensive investigation of cocaine trafficking in Gregg County. The investigation focused on the activities of John and Judy Lindley, who were among the thirty-two people indicted. The investigating authorities kept the Lindleys' apartment under surveillance and tapped the apartment telephone. The police searched the Lindleys' apartment pursuant to a warrant recovering three pounds of cocaine, drug paraphernalia and weapons. The officers also searched a car leased by the Lindleys, but not described in the warrant. The search of the Lindley automobile produced notebooks detailing numerous drug transactions. During a search of a separate town house at which the Lindleys had been observed, the officers seized another ledger detailing cocaine transactions.

Appellant, by his first three points of error, contends that the evidence is insufficient to support his conviction.

■ Appellant was charged with violating TEX.PENAL CODE § 71.02(a)(5), which reads as follows:

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following:

. . . .

(5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug. . . .

The pertinent definitions are contained in TEX.PENAL CODE § 71.01,[1] which at the time the indictment was returned, read as follows:

(a) A "combination" means five or more persons who collaborate in carrying on criminal activities, although:

(1) participants may not know each other's identity;

(2) membership in the combination may change from time to time; and

(b) "Conspires to commit" means that a person agrees with one or more persons that they or one or more of them engage in

conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

The indictment of appellant alleged that on or about September 3, 1986, and continuing until on or about September 12, 1986, appellant and thirty-two others did then and there with the intent to establish, maintain and participate in a combination and in the profits of a combination, knowingly and intentionally conspire to commit the offense of unlawful delivery of cocaine and agreed among themselves and with each other to engage in this offense and in pursuance of such agreement and in furtherance of it the said defendants performed overt acts.

The overt acts alleged against appellant are as follows:

(20) communicated with John Lindley by telephone on or about September 5th, 1986;

(21) communicated with John Lindley by telephone on or about September 11th, 1986;

(22) made a payment to John Lindley for cocaine on or about September 10th, 1986.

■ The standard of review for both direct and circumstantial evidence is whether any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt. In making this determination, the reviewing court must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Marroquin v. State*, 746 S.W.2d 747 (Tex.Cr. App.1988).

Appellant concedes that, viewed in the light most favorable to the State, the evidence shows a combination of five or more persons collaborating to deliver cocaine. However, appellant contends that the evidence is insufficient to permit the inference

---

**1.** Acts, 65th Leg., ch. 346, § 1, 1977 Tex.Gen. & Spec.Laws 922, amended by Acts, 71st Leg. ch. 782, § 1, Tex.Gen. & Spec.Laws 3468.

that he knew that the purpose of the combination was the delivery of cocaine, as opposed to its mere use or possession. In appellant's view, the evidence does not permit the inference that he knew five people in the combination were using cocaine, let alone delivering it. He argues that there is insufficient proof that he conspired to commit the delivery of cocaine, *with the specific intent of participating in a criminal group of at least five persons. Citing Barber v. State*, 764 S.W.2d 232, 236 (Tex.Cr.App.1988).

To establish defendant's guilt "of the offense of organized criminal activity, an actor must commit or conspire to commit one or more of the enumerated crimes, with the specific intent of participating in a criminal group of at least five persons." *Id.* at 235. The State must prove that it was the accused's intent to participate in a combination of more than four persons, and that he or she also possessed the intent to participate in the profits of the combination. *Richardson v. State*, 763 S.W.2d 594, 596 (Tex.App.—Corpus Christi 1988, no pet.). Thus, in order to prove intent, the State must show that the accused knew of the criminal activity of the group. *Id.; Nickerson v. State*, 686 S.W.2d 294, 297 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Direct evidence is rarely available to prove a conspiracy necessarily hatched in secrecy. Almost inevitably, circumstantial evidence, including the conspirator's conduct, must be relied upon to prove the essential elements of the crime. *Farrington v. State*, 489 S.W.2d 607 (Tex.Cr.App.1972). Similar methods of operation, together with joint activities and relationships, support the finding of a single conspiracy. *United States v. Ochoa*, 609 F.2d 198 (5th Cir.1980); *Kennard v. State*, 649 S.W.2d 752, 764 (Tex.App.—Fort Worth 1983, pet. ref'd).

The appellant concedes that, viewed in the light most favorable to the State, the evidence shows that John and Judy Lindley were the hub of an extensive cocaine distribution system in Longview. They served as suppliers of cocaine to a network of smaller dealers including the appellant. Often the cocaine was advanced or "fronted" to the retail dealer on credit, and when the cocaine was resold, the Lindleys received payment within a matter of hours. The detailed business records of the enterprise, the surveillance, and wiretaps demonstrate that far more than five persons were included within the combination. At least several of the confederates were on familiar terms and shared their plans and mutual concerns, not only with the Lindleys, but with one another.

There is direct evidence that appellant had some contact with at least three members of the combination other than the Lindleys. Mike Gibbons answered the telephone twice when appellant called the Lindleys. In the first call appellant identified himself by his nickname of Junior; in the second call he told Gibbons "this is Wes." Gibbons and appellant were not strangers to one another. Surveillance reports and wiretap evidence showed that appellant was at the Lindley apartment on more than one occasion while John LaRoux, another of the confederates, was also there. On one of these occasions, appellant and LaRoux carried on a brief conversation on the sidewalk just outside the Lindley apartment. When LaRoux left, appellant walked back to the parking lot and spoke to someone who had just pulled up in a Lincoln Continental. The driver handed appellant something small enough to be concealed in the hand. Appellant then entered the Lindley apartment. Shortly thereafter, appellant answered the door to the Lindley apartment when Billy Mabry, another member of the combination arrived with his wife.

Judy Lindley ordinarily devoted a separate section of her records to each of the dealer's drug transactions and labeled it with the dealer's name. No section bore appellant's name. However, one of the entries in an unlabelled section recorded a transaction that occurred during a time when surveillance showed that, other than the Lindleys, appellant was the only person in the Lindley apartment who did not have a named section in the records. State's exhibit 41 is a summary, in Judy Lindley's handwriting, of the amounts the various dealers owed the Lindleys. "Wes" is shown as owing $800, but an attempt was made to scratch out the name and amount. The amount due to from "Wes" corresponds to the $800 balance due in the unnamed section. The wife of one of the

conspirators testified that Judy Lindley told her that appellant had objected to his name appearing in the records.

A scratched out entry in a separate note in John Lindley's handwriting dated September 11 at 3:00 p.m. shows that "Jr." (appellant's nickname) was to be fronted (advanced on credit) eight ounces of cocaine for $9,600. Another John Lindley note records an $800 cash transaction with "Jr." at 6:15, September 11. Surveillance confirmed that appellant was with the Lindleys at both of the times shown on the notes.

There is strong circumstantial evidence that the unmarked section of the Lindley drug records belonged to appellant. That section recorded total purchases of 1484 grams of cocaine for $74,200 during the 114–day period ending September 10, 1986. Like the other dealers, appellant was advanced much of the cocaine on credit.

Considering all of the evidence, we conclude that there is sufficient proof to support the jury's implied findings that appellant had the specific intent to participate in a criminal combination of at least five persons, and that appellant knew its purpose was the sale of cocaine. Upon the evidence in the record, a rational trier of fact could find all of the elements of the offense beyond a reasonable doubt. Appellant's first three points of error are overruled.

■ In his fourth point of error, appellant maintains that the trial court erred in admitting into evidence the notebook seized in the search of the Lindley car. The notebook contains what the State insists is a record of appellant's cocaine purchases from the Lindleys, beginning May 19, 1986, and ending September 10, 1986. Only one of the entries recorded a cocaine purchase during the period of the conspiracy alleged in the indictment. The appellant argues that the numerous other cocaine purchases by appellant recorded during the 114–day period before September 10, 1986, are extraneous offenses. He challenges their admission on three grounds:

    (a) The acts of uncharged misconduct were not relevant to any issue other than Appellant's character and propensity to commit such acts;

    (b) The probative value of the acts of uncharged misconduct was substantially outweighed by unfair prejudice to Appellant; and

    (c) The State failed to clearly prove commission of those acts of uncharged misconduct by Appellant.

We disagree with appellant's characterization of the cocaine sales recorded in State's exhibit 68 before September 3, 1986, as extraneous offenses. The indictment alleges that the appellant and the other members were engaged in a criminal combination conspiring to sell and selling cocaine from September 3, 1986, until September 12, 1986. The notebook records a continuous series of drug transactions during the 114–day period culminating in their arrest on September 12, 1986. The notebook shows in surprisingly meticulous detail that the membership and purpose of the criminal combination and the extent and regularity of its members' dealings were the same before and after September 3, 1986. The Lindley records document the existence of the same combination three months before the dates alleged in the indictment. The only thing that changed on September 3, 1986, was that on or about that date the police instituted round-the-clock surveillance of the Lindley apartment, the hub of the criminal enterprise.

■ The essence or gravamen of conspiracy offenses, that is that which is punishable, is the unlawful agreement or combination, not the overt acts required to complete the offense. 15A C.J.S.2d Conspiracy § 36 (1967). A conspiracy is inherently a continuing offense. Once formed, a conspiracy continues until it is consummated, abandoned, or otherwise terminated by some affirmative act. *See Robins v. State,* 134 Tex.Crim. 617, 117 S.W.2d 82 (1938); *Burnett v. State,* 754 S.W.2d 437 (Tex.App.—San Antonio 1988, pet. ref'd). The appellant was not charged with separate possessions or deliveries of drugs to which any other offenses shown in the Lindley's records would be extraneous. He was accused of participating in a criminal combination conspiring to sell cocaine. Although the challenged sales recorded in ex-

hibit 68 each constitute an offense, each one of them is an overt act in furtherance of the same conspiracy alleged in the indictment. They are not extraneous to the conspiracy, they are a part of it. The fourth point of error is overruled.

■ In appellant's fifth point of error, he challenges the trial court's admission of State's exhibit no. 76 into evidence. State's exhibit no. 76 contained numerous acts of prior uncharged misconduct. This exhibit is another Lindley ledger apparently recording marihuana and cocaine sales between "2/16" and "3/28" of an unspecified year. Exhibit 76 apparently documents drug transactions with several people including "Wes" or "Wesley" who is shown to have made four four-ounce purchases during March for $27,100. The first names of some of the buyers listed in exhibit 76 are the same as some of those indicted as members of criminal combination. Most are not.

The ledger was discovered during a consensual search of the Lindleys' town house. Unlike State's exhibit 68 and the other Lindley drug records, the activity recorded in State's exhibit 76 was not corroborated by surveillance or wiretap. There is no evidence of the year in which the sales occurred, or that they were connected with the conspiracy alleged in the indictment or in furtherance of it. However, in closing argument, the State referred to exhibit 76, telling the jury "Your going to find the name Wesley throughout it dealing in cocaine."

Unlike State's exhibit 68, the sales recorded in State's exhibit 76 are offenses extraneous to the crime with which appellant is charged. The general rule in all English speaking jurisdictions is that evidence of extraneous offenses is not admissible, because the "accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally." *Young v. State,* 159 Tex.Crim. 164, 261 S.W.2d 836, 837 (1953).

■ In the instant case, the court's charge limited the jury's consideration of appellant's other offenses to the issue of intent. A long recognized exception to the general rule permits the admission of evidence of extraneous offenses as circumstantial proof of intent, where intent is an essential element of the State's case. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972). However, the admissibility of extraneous offenses requires an analysis of the facts and circumstances of each case in the light of the test set forth in *Williams v. State,* 662 S.W.2d 344, 346 (Tex. Cr.App.1983). *Crank v. State,* 761 S.W.2d 328 (Tex.Cr.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). Under *Williams v. State,* extraneous offenses committed by the accused are admissible only upon a showing that (1) the offense is relevant to the proof of a contested material issue in the case, and (2) its relevancy outweighs its inflammatory or prejudicial potential. *Williams v. State,* 662 S.W.2d at 346. Further, even though evidence of another crime may be admissible under the *Williams* test, the evidence should not be admitted unless the commission of the extraneous offense is clearly proved and the accused is shown to be the perpetrator. *Turner v. State,* 754 S.W.2d 668, 673 (Tex.Cr.App.1988).

■ Similarity and remoteness together with the purpose of the offer are the most important factors to be considered in weighing the probative value of the extraneous offense against its unfairly prejudicial potential. *Plante v. State,* 692 S.W.2d 487, 491 (Tex.Cr.App.1985). In this case, the extraneous and the charged offense are cocaine sales. Insufficient similarity is not the problem. However, from this record we can only surmise the year or even the place in which the sales were made. The ledger documents drug purchases by a generally different group. It is impossible to determine just how remote the extraneous offenses are from the crime with which appellant is charged.

In our view there has been no satisfactory showing that appellant was the same person who committed the extraneous offenses recorded in exhibit 76. There was no confirming surveillance or wiretap evidence to tie the appellant to the contents of State's exhibit 76 as there was with the exhibit 68. There was testimony that the section of exhibit 68 recording appellant's purchases during the conspiracy did not have his name on it because he had objected to having his name on the

records. Yet the only thing that ties appellant to the ledger recording $27,100 worth of extraneous offenses is the name "Wesley." Is the name Wesley so rare as to negate the reasonable possibility that more than one Wesley was fronted cocaine during the time they were in business? That proposition is made even more dubious under the facts of this case since we cannot tell the year or place of the extraneous drug transactions. While the evidence creates a strong suspicion that appellant was the "Wesley" who was the perpetrator of the extraneous offenses, we conclude that the evidence falls short of a clear showing that he was the perpetrator. The danger of unfair prejudice is too great to allow the admission of such potentially unfair prejudicial evidence without such a clear showing. The court erred in admitting the ledger (exhibit 76). Appellant's fifth point is sustained.

■ The evidence of appellant's guilt was circumstantial, and although sufficient, less than overwhelming. It consists chiefly of "fronted" cocaine purchases recorded by Judy Lindley in an unlabeled section of State's exhibit 68, the drug records of the combination. However in closing argument the prosecutor referred to exhibit 76 containing the improperly admitted extraneous offenses and told the jury, "You're going to find the name Wesley throughout it dealing in cocaine."

Appellant was thirty-five years old at the time of trial and had been steadily employed since he left college. He had never been convicted of a criminal offense, and was eligible for probation. The range of punishment was confinement for from five to ninety-nine years. Appellant's punishment was assessed by the jury at fifteen years. We are unable to conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

The judgment is reversed and the cause remanded for a new trial.