TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00514-CR







John Michael Reina, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0953380, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 Appellant John Michael Reina, Jr., tried jointly with co-defendant Charles Carlson,
was convicted of attempted murder and engaging in organized criminal activity. See Carlson v.
State, No. 03-95-507-CR (Tex. App.--Austin Feb. 27, 1997). The jury found Reina used a deadly
weapon during the commission of the offenses. Because we conclude the evidence does not
factually support the jury's verdicts against Reina on either offense, we will reverse the judgment
of conviction and remand the cause for a new trial. Because we remand the cause for a new trial,
we will address Reina's double jeopardy challenge to being tried for both attempted murder and
engaging in organized criminal activity. We need not reach the other assignments of error. (1)

BACKGROUND

 On the night of January 10, 1995, Ricardo Davila, a homeless person, was severely
beaten and set afire. The police arrested appellant, Charles Carlson, and Mike Brown in connection
with the offense. Reina and Carlson were indicted for engaging in organized criminal activity,
attempted murder, and aggravated assault. See Tex. Penal Code Ann. §§ 15.01, 19.02, 22.02, &
71.02 (West 1994 & Supp. 1997). The following facts were revealed at their joint trial.

 Sometime during the evening of the offense, Reina, Carlson, and Brown went to a
convenience store. There Carlson and Brown encountered Davila and, for reasons not revealed in
the record, got into an argument. Davila, Carlson, and Brown ended up in an alley behind the store
in a physical confrontation. Carlson and Brown kicked and stomped on Davila. They threw bottles
and a bag of hardened cement at him. Immediately after the beating, Brown went into the store and
bought a bottle of lighter fluid. Brown returned to the alley and doused Davila with the fluid. 
Carlson then set Davila afire.

 Scott Ferris, who was walking up the stairs at an apartment complex next to the
convenience store, witnessed parts of the assault. When he went to investigate, he saw two young
men leaving the scene, whom he later identified as Carlson and Brown. He watched them get into
the passenger side of a car that was backed into an apartment parking lot space near the end of the
fence. Although the car left quickly, Ferris was able to write down the license plate number of the
car.

 Immediately afterward, Ferris walked down the alley and saw Davila engulfed in
flames. When neither Ferris nor Davila could extinguish the flames, Davila ran across the street to
a gas station. Customers at the gas station eventually extinguished the flames using blankets and a
fire extinguisher.

 Officer Robert Hester of the Austin Police Department was dispatched to investigate
the incident. Before emergency medical personnel arrived, Davila told Hester two males had
assaulted him.

 After Reina, Carlson, and Brown left the scene, they met a friend, Bradley Livingston,
on Sixth Street. Brown and Livingston walked to a store together while Reina and Carlson waited
in the car. The four eventually drove to Carlson's apartment where Livingston says the other three
told him about the incident in the alley.

 Carlson and Reina were indicted and tried jointly. (2) The jury charge included an
instruction on organized criminal activity, the underlying offense being either the commission of
aggravated assault, conspiracy to commit aggravated assault, or conspiracy to commit murder. See
Tex. Penal Code Ann. §§ 15.02, 19.02, 22.02, & 71.02 (West 1994 & Supp. 1997). The charge also
included instructions on attempted murder and the law of parties. See Tex. Penal Code Ann. §§ 7.02,
15.01, 19.02 (West 1994). The jury convicted both Reina and Carlson of attempted murder and
engaging in organized criminal activity, but did not specify the theory of organized criminal activity
upon which they relied. They further found both Reina and Carlson had used deadly weapons during
the commission of the crimes. The jury assessed punishment for both Reina and Carlson at ninety-nine years' confinement for engaging in organized criminal activity and twenty years' confinement
for attempted murder, the sentences to be served concurrently.

DISCUSSION

Legal Sufficiency of the Evidence

 In his first two points of error, Reina argues the evidence is legally insufficient to
support the convictions. In deciding a legal sufficiency point, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979);
Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).

 Reina first argues the evidence does not legally support his conviction for engaging
in organized criminal activity. A person engages in organized criminal activity if, with the intent to
establish, maintain, or participate in a combination or in the profits of a combination or as a member
of a criminal street gang, he commits or conspires to commit one of several predicate offenses listed
in section 71.02(a) of the Texas Penal Code. See Tex. Penal Code Ann. § 71.02(a) (West Supp.
1997). Among those offenses are murder and aggravated assault. See id. The indictment alleged
that Reina engaged in organized criminal activity by intending to establish, maintain, or participate
in a combination and either (1) conspiring to commit murder or (2) conspiring to commit or actually
committing aggravated assault by (a) causing serious bodily injury or (b) using a deadly weapon. 
The jury charge included almost identical instructions. 

 In order to prove Reina's guilt under any of the State's theories, the State was
required to prove Reina committed an overt act in furtherance of the conspiracy or combination. See
Tex. Penal Code Ann. 71.01 (West 1994 & Supp. 1997); Shears v. State, 895 S.W.2d 456, 459 (Tex.
App.--Tyler 1995, no pet.) (when conspiracy is underlying organized criminal activity charge, State
must prove overt act). Reina claims there was no evidence that he committed such an overt act. 

 The evidence suggests otherwise. First, Bradley Livingston testified that the group
told him in the hours after the offense that Reina began the assault by throwing a rock at Davila's
head. According to Livingston, Reina did not deny this accusation. Second, Reina waited in his car,
which was backed into a space not in the convenience store lot but in a neighboring parking lot at
the end of the alley where the assault took place. This act could be construed as Reina's attempt to
aid the group in making a quick getaway. This evidence, viewed in the light most favorable to the
verdict, supports the inference that Reina committed an overt act in furtherance of a combination or
conspiracy to kill or seriously injure Davila. Consequently, we overrule Reina's first point of error.

 Next, Reina argues the evidence did not legally support his conviction for attempted
murder. The indictment alleged that Reina, "with the specific intent to commit the offense of
murder," tried to kill Davila. The jury charge incorporated this allegation by instructing the jury that
"a person commits the offense of murder if he intentionally or knowingly causes the death of an
individual." See Tex. Penal Code Ann. § 19.02(b)(1) (West 1994). (3) In order to prove Reina guilty
of attempted murder, therefore, the State was required to produce evidence that Reina had the
specific intent to kill Davila. Because both the indictment and charge contained instructions on the
law of parties, a conviction could be had upon either the theory that Reina himself intended to
murder or that he intended to assist others in the commission of Davila's murder. See Tex. Penal
Code Ann. § 7.02(b) (West 1994). 

 Our review of the record evidence reveals there is some evidence to support Reina's
conviction for attempted murder. First, Livingston's testimony about Reina's rock throwing supports
the conviction. Furthermore, Livingston testified that the group told him Reina and Brown had
encountered Davila earlier in the day and had argued with him. This evidence could suggest that
Reina had a motive to assist in the attack on Davila. A rational trier of fact could have found, based
on these pieces of evidence, that Reina intended to kill Davila or at least help his friends kill Davila
and that Reina performed an act in furtherance of that intent. Accordingly, we overrule Reina's
second point of error.


Factual Sufficiency of the Evidence

 In points of error three and four, Reina argues the evidence is factually insufficient
to support the convictions. This Court has previously detailed the historical development of the
Texas appellate courts and reached the conclusion that courts of appeals are constitutionally
empowered and indeed required to conduct factual sufficiency reviews of the evidence when
requested by appellants in criminal cases. See Stone v. State, 823 S.W.2d 375, 379-381 (Tex.
App.--Austin 1992, pet. ref'd untimely filed). The court of criminal appeals has affirmed this
conclusion. See Clewis v. State, 922 S.W.2d 126, 133-32 (Tex. Crim. App. 1996); see also Santellan
v. State, No. 72-130, slip op. at 8 (Tex. Crim. App. Jan. 29, 1997). 

 The standard of review for factual sufficiency claims is well established. We must
consider all the relevant record evidence, not just the evidence that supports the verdict. Santellan,
slip op. at 8. We compare the evidence that tends to prove the disputed element of the crime with
the evidence that tends to disprove it. Id. We are authorized to disagree with a jury's verdict, even
in the face of evidence tending to prove their verdict. We are mindful of the fact, however, that we
may not substitute our judgment for that of the fact finder. We recognize we may not set aside a jury
verdict merely because we feel that a different result is more reasonable. See id. at 9. We must
maintain appropriate deference to the jury's findings by finding error only when "the verdict is
against the great weight of the evidence presented at trial so as to be clearly wrong and unjust." Id. 

 Our review of recent caselaw applying the Clewis-Stone standard reveals that
although Texas courts recognize their duty to conduct factual sufficiency reviews in criminal cases,
the exercise of that duty rarely results in the reversal of a criminal conviction. Cf. White v. State, 890
S.W.2d 131 (Tex. App.--Texarkana 1994, no pet.) (reversing conviction for lack of factually
sufficient evidence). While we are cognizant of the fact that criminal appellants rarely meet the
heavy burden imposed upon them in establishing factual insufficiency claims, we are compelled to
conclude that this case is an exception to the general rule. In accordance with the court of criminal
appeals' instructions, we detail our interpretation of the evidence below. See Clewis, 922 S.W.2d
at 135-36.

 With respect to the conviction for attempted murder, the overwhelming weight of the
evidence mitigates against the conclusion that Reina was guilty of attempted murder. The only
evidence suggesting Reina may have had the intent to kill Davila is Livingston's testimony that (1)
Reina threw a rock and hit Davila at the beginning of the incident, and (2) Reina and Brown had
argued with Davila earlier in the day. Even that evidence does not necessarily suggest Reina meant
to kill Davila or to encourage his friends to kill Davila. Livingston's statement about Reina's rock
throwing is devoid of information on the size of the rock or the manner in which it was thrown. 
There is no other information in the record suggesting that Reina had actually encountered Davila
earlier in the day. Most importantly, Livingston admitted his only knowledge of the incident was
based on the hearsay statements of the group; Livingston did not purport to have first-hand
knowledge of the events. Furthermore, Livingston did not identify exactly who told him about the
incident; he only said "they" told him as a group. Livingston's testimony does not indicate that
Reina himself admitted to being involved in the crime. (4) 

 All the other evidence suggests Reina did not intend to kill Davila himself or to assist
Carlson and Brown in doing so. Brown, who did have first-hand knowledge of the event, testified
at trial that Reina had no knowledge of or involvement in the crime. He further testified that the
group originally went to the store to buy cigarettes. According to Brown, all Reina did was provide
the money for cigarettes. Brown and Carlson then formulated a plan to buy lighter fluid with the
money without Reina's knowledge. The State, however, introduced prior inconsistent statements
Brown gave the police after he was arrested. Although those statements contradicted some of
Brown's trial testimony, the jury could not properly use the prior inconsistent statements as
substantive evidence against Reina. See Miranda v. State, 813 S.W.2d 724, 735 (Tex. App.--San
Antonio 1991, pet. ref'd). Interestingly, Livingston's testimony coincided with Brown's original
statements to the police almost perfectly, and both Brown and Livingston testified that they spent
time alone after the assault outside the presence of Reina and Carlson. Brown testified that on the
night of the assault he lied to Livingston about Reina's involvement. The convenience store clerk
corroborated the fact that Brown lied in his original statement; the clerk testified only one person
came in to buy lighter fluid while Brown's original statement said Carlson accompanied him to buy
the fluid. The evidence as a whole heavily supports the conclusion that Brown finally told the truth
at trial and that Livingston merely parroted the lies Brown told him on the night of the offense.

 The testimony by eyewitness Scott Ferris also tends to exculpate Reina. Ferris saw
only two people beating Davila; he identified those people as Carlson and Brown. Moreover, Davila
told the officer at the scene that two people, not three, had assaulted him. He stated at trial that he
was not sure he remembered three people being involved but he definitely remembered two people
beating him. Reina's mother testified that Reina denied being involved in the crime or knowing
what Carlson and Brown were doing while he sat in his car. There is no evidence in the record
suggesting Reina could see the attack taking place.

 In short, Livingston's secondhand testimony is the lone shred of evidence suggesting
Reina had the intent to injure Davila. The rest of the evidence suggests Reina was unaware of
Davila's presence at the store that evening and could not have had any intent to do anything to Davila
at all. We find the jury's verdict manifestly unjust in the face of the overwhelming evidence that
Reina was unaware of any criminal assault. We hold the evidence, while legally sufficient, is
factually insufficient under the Clewis standard to support the verdict against Reina for the
commission of attempted murder. Accordingly, we sustain Reina's fourth point of error.

 We are just as convinced that the evidence is not factually sufficient to support
Reina's conviction for engaging in organized criminal activity. The discussion of our previous
holding applies equally to the allegation that Reina intended to establish a combination to commit
either murder or aggravated assault. The great weight of the evidence suggests that Reina did not
participate in a combination to plan an attack or any criminal activity that could foreseeably lead to
an attack. The intent to establish a combination is an essential element of the offense of engaging
in organized criminal activity. See Tex. Penal Code Ann. § 71.02(a) (West 1994). Furthermore, the
State was required to prove Reina knew of the criminal purpose of the alleged combination. See
Harrell v. State, 885 S.W.2d 427, 430 (Tex. App.--Tyler), reversed and remanded on other
grounds, 820 S.W.2d 800 (Tex. Crim. App. 1991). Because the evidence is factually insufficient
to support an affirmative finding on the existence of a combination or Reina's knowledge of a
criminal purpose, we hold the evidence is factually insufficient to support the jury's verdict. We
sustain Reina's third point of error. 


Double Jeopardy

 In his eleventh and twelfth points of error, Reina contends his multiple convictions
for attempted murder and engaging in organized criminal activity violate the double jeopardy
provisions of the Fifth and Fourteenth Amendments to the United States Constitution and article I,
section 14 of the Texas Constitution. The article I, section 14 double jeopardy provisions of the
Texas Constitution provide the same protection as their counterparts in the United States
Constitution. See Lozano v. State, 860 S.W.2d 152, 154 n.2 (Tex. App.--Austin 1993, pet. ref'd)
(citing Phillips v. State, 787 S.W.2d 391, 393 n. 2 (Tex. Crim. App. 1990)). Both constitutions
prohibit (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for
the same offense after conviction, and (3) multiple punishments for the same offense. See Illinois
v. Vitale, 447 U.S. 410, 415 (1980); Cervantes v. State, 815 S.W.2d 569, 572 (Tex. Crim. App.
1991). 

 Reina focuses on the third type of double jeopardy prohibition; that is, he contends
he is suffering multiple punishments for the same offense. In order to establish guilt of engaging in
organized criminal activity, the State must prove, among other things, that the defendant committed
or conspired to commit one of the many predicate offenses listed in Texas Penal Code section
71.02(a)(1) through (10). Reina argues that, when a defendant is charged with both engaging in
organized criminal activity and a separate offense that happens to be included in section 71.02(a)(1)
through (10), the two offenses "merge" and become the "same" offense. 

 A court may impose cumulative punishment in a trial for the violation of two statutes,
regardless of whether those two statutes proscribe the "same" conduct under the other two types of
double jeopardy prohibitions, if the legislature so intends. Missouri v. Hunter, 459 U.S. 359, 368
(1983); see also Blockburger v. United States, 284 U.S. 299 (1932); Ex Parte Kopecky, 821 S.W.2d
957, 959 (Tex. Crim. App. 1992). If a court determines the legislature intended to impose
cumulative sentences for the same conduct, the court may end its inquiry and impose both sentences. 
See Missouri, 459 U.S. at 368-69. Therefore, whether the two offenses alleged in this case are the
"same" or "merged" offenses is irrelevant if we find the legislature intended multiple punishments
for both. 

 Assuming without deciding that the two statutes enforced in this case proscribe the
same conduct, we conclude the legislature intended to impose cumulative punishments for the
violation of both statutes. The legislature specifically provided that a person's being charged with,
acquitted, or convicted of an offense underlying the organized criminal activity statute is no defense
to prosecution under the organized criminal activity statute. See Tex. Penal Code Ann. § 71.03(3)
(West 1994). This provision evinces the legislature's intent that a person may be tried and convicted
of both engaging in organized criminal activity and attempted murder, one of the predicate offenses
listed in the statute. Therefore, we hold the simultaneous prosecution of Reina for attempted murder
and engaging in organized criminal activity did not violate the double jeopardy provisions of either
the federal or state constitution. Accordingly, we overrule Reina's eleventh and twelfth points of
error.


CONCLUSION

 We have held Reina's convictions are not factually supported by the evidence. We,
therefore, reverse Reina's convictions and remand the cause to the trial court for a new trial. See
Clewis, 922 S.W.2d 133-34.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B.A. Smith

Reversed and Remanded

Filed: February 27, 1997

Publish

1. Reina brings thirteen points of error, alleging (1) the convictions were not supported by legally
or factually sufficient evidence, (2) the deadly weapon findings were not supported by the evidence,
(3) the trial court erred in permitting the State to impeach one of its witnesses, (4) the trial court
erred in failing to grant a mistrial based upon an improper sidebar remark by the State, (5) his
multiple convictions violate the double jeopardy provisions of the state and federal constitutions, and
(6) the trial court erred in failing to sever Reina's trial from Carlson's. 
2. The record does not reveal why Brown was not tried with Reina and Carlson.
3. Neither the indictment nor the jury charge alleged other possible theories of attempted murder,
such as the intentional causation of serious bodily injury coupled with the commission of an act
clearly dangerous to human life, or felony murder. See Tex. Penal Code Ann. § 19.02(b)(2), (3)
(West 1994). 
4. The State argues Reina adopted the statements as personal admissions by not correcting the
speaker about the extent of Reina's involvement. See Alvarado v. State, 912 S.W.2d 199, 214-15
(Tex. Crim. App. 1995). While this is one possible interpretation of the evidence, Reina's silence
during the telling of the story does not necessarily support the inference that he agreed with the
version told. A reasonable person might well stand silent while two violent men brag about brutally
beating and then burning a victim.


 The State also points out that Livingston testified that all three of the alleged assailants were
"pumped up" while relating the story. We do not find this evidence probative in light of the fact that
Livingston did not specify which person told him which part of the story. Livingston's testimony
does not establish that Reina incriminated himself; therefore, Reina's demeanor during the alleged
conversation was irrelevant.


mmit one of the many predicate offenses listed in Texas Penal Code section
71.02(a)(1) through (10). Reina argues that, when a defendant is charged with both engaging in
organized criminal activity and a separate offense that happens to be included in section 71.02(a)(1)
through (10), the two offenses "merge" and become the "same" offense. 

 A court may impose cumulative punishment in a trial for the violation of two statutes,
regardless of whether those two statutes proscribe the "same" conduct under the other two types of
double jeopardy prohibitions, if the legislature so intends. Missouri v. Hunter, 459 U.S. 359, 368
(1983); see also Blockburger v. United States, 284 U.S. 299 (1932); Ex Parte Kopecky, 821 S.W.2d
957, 959 (Tex. Crim. App. 1992). If a court determines the legislature intended to impose
cumulative sentences for the same conduct, the court may end its inquiry and impose both sentences. 
See Missouri, 459 U.S. at 368-69. Therefore, whether the two offenses alleged in this case are the
"same" or "merged" offenses is irrelevant if we find the legislature intended multiple punishments
for both. 

 Assuming without deciding that the two statutes enforced in this case proscribe the
same conduct, we conclude the legislature intended to impose cumulative punishments for the
violation of both statutes. The legislature specifically provided that a person's being charged with,
acquitted, or convicted of an offense underlying the organized criminal activity statute is no defense
to prosecution under the organized criminal activity statute. See Tex. Penal Code Ann. § 71.03(3)
(West 1994). This provision evinces the legislature's intent that a person may be tried and convicted
of both engaging in organized criminal activity and attempted murder, one of the predicate offenses
listed in the statute. Therefore, we hold the simultaneous prosecution of Reina for attempted murder
and engaging in organized criminal activity did not violate the double jeopardy provisions of either
the federal or state constitution. Accordingly, we overrule Reina's eleventh and twelfth points of
error.


CONCLUSION

 We have held Reina's convictions are not factually supported by the evidence. We,
therefore, reverse Reina's convictions and remand the cause to the trial court for a new trial. See
Clewis, 922 S.W.2d 133-34.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B.A. Smith

Reversed and Remanded

Filed: February 27, 1997

Publish

1. Reina brings thirteen points of error, alleging (1) the convictions were not supported by legally
or factually sufficient evidence, (2) the deadly weapon findings were not supported by the evidence,
(3) the trial court erred in permitting the State to impeach one of its witnesses, (4) the trial court
erred in failing to grant a mistrial based upon an improper sidebar remark by the State, (5) his
multiple convictions violate the double jeopardy provisions of the state and federal constitutions, and
(6) the trial court erred in failing to sever Reina's trial from Carlson's. 
2. The record does not reveal why Brown was not tried with Reina and Carlson.
3. Neither the indictment nor the jury charge alleged other possible theories of attempted murder,
such as the intentional causation of serious bodily injury coupled with the commission of an act
clearly dangerous to human life, or felony murder. See Tex. Penal Code Ann. § 19.02(b)(2), (3)
(West 1994). 
4. The State argues Reina adopted the statements as personal admissions by not correcting the
speaker about the extent of Reina's involvement. See Alvarado v. State, 912 S.W.2d 199, 214-15
(Tex. Crim. App. 1995). While this is one possible interpretation of the evidence, Reina's silence
during the telling of the story does not necessarily support the inference that he agreed with the
version told. A reasonable person might well stand silent while two violent men brag about brutally
beating and then burning a victim.


 The State also points out that Livingston testified that all three of the alleged assailants were
"pumped up" while relating the story. We do not find this evidence probative in light of the fact that
Livingston did not specify which person told him which part of the story. Livingston's testimony
does not establish that Reina incriminated himsel