TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00696-CR


NO. 03-96-00697-CR


NO. 03-96-00698-CR







Fergus Joseph Dowling, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NOS. CR-95-0179, CR-95-0180 & CR-95-0181


HONORABLE WILLIAM BENDER, JUDGE PRESIDING







A jury found appellant guilty of aggravated kidnapping, attempted aggravated sexual
assault, and retaliation. See Tex. Penal Code Ann. §§ 15.01 (West 1994), 20.04(a)(4),
22.021(a)(1)(A)(i) & (a)(2)(A)(iv), 36.06(a)(2)(B) (West Supp. 1998). (1) The jury assessed punishment
for each offense at imprisonment for six years. We will affirm the district court's judgments.

Appellant contends the evidence is legally and factually insufficient to sustain his conviction
for retaliation, and factually insufficient to sustain the other two convictions. In determining the legal
sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing all the
evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa
v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App.
1981). When conducting a factual sufficiency review, the evidence is not viewed in the light most favorable
to the verdict. Instead, all the evidence is considered equally, including the testimony of defense witnesses
and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin
1992, no pet.). A verdict will be set aside for factual insufficiency only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet.
ref'd as untimely filed). 

Appellant was a regular customer at the San Marcos restaurant where Christina Mayne
worked as hostess and cashier. During a conversation one day at the restaurant, appellant told Mayne that
the young woman who answered the telephone and did word processing for appellant's medical consulting
business was leaving, and asked if Mayne would be interested in the job. Mayne said she would. Mayne
agreed to meet appellant at the restaurant the following morning for the purpose of going to appellant's
office and meeting Melissa, the woman she was to replace.

The next morning, appellant met Mayne at the restaurant and drove her to his residence
outside San Marcos. Inside, the house was dark. Appellant told Mayne that Melissa had not yet arrived. 
Appellant led Mayne through the house to the room he identified as his office. In fact, the room was a
bedroom. Mayne testified, "I was very concerned, and I wasn't sure what was going to happen, but I
knew that it didn't seem to be what he said it was going to be." She picked up a telephone and attempted
to contact an operator. Appellant seized Mayne from behind, took away the telephone, and forced her
to the floor. He began to tie her hands behind her back with plastic strips, identified by a police officer as
"flexi-cuffs."

Mayne struggled with appellant and attempted to kick him. Appellant told her "not to
struggle or he would break [her] arm." Finally, to subdue Mayne, appellant shocked her twice with an
electric stun gun. After tying Mayne's hands and ankles together, appellant "pulled [her] back up to [her]
knees" and pointed a revolver at her chest. Appellant asked Mayne, "Do you know what this means?" 
She told him it meant that he could kill her. Appellant said, "I won't if you do exactly what I say."

Appellant then took Mayne to a different bedroom and forced her to lie on the bed. He
unbuttoned her shirt and touched her "over [her] bra." Mayne believed that appellant was going to rape
her, but he did not. Instead, he left the bedroom, then returned carrying a cattle prod. Appellant told
Mayne that the prod "was in case he didn't want to use the gun." Mayne asked appellant why he was
doing this to her. He answered, "Because you're just too nice."

Appellant began to smoke cigarettes and look at Mayne. She continued to ask him not
to hurt her. After several minutes, appellant told Mayne he had decided to let her go and offered her three
hundred dollars in cash. She told him she did not want the money, but he said he wanted her to have it. 
He added, "I guess I'm trying to buy your silence." 

Appellant untied Mayne and they returned to appellant's car. As he drove her back to the
restaurant, appellant told her "three things could happen." Mayne "could say nothing about it," she "could
turn him in and he would go to trial and accept his punishment," or she "could tell the police, and [he] would
go to jail, but not for very long, and that he could then come and kill [her] and [her] mom and [her] sister." 
Appellant seemed very serious when he said this. At the restaurant, Mayne got out of appellant's car and
he drove away. The entire episode lasted about one and one-half hours.

Mayne immediately reported to the police what had happened. Officers began arriving at
appellant's residence around 10:00 a.m., but did not take appellant into custody until about 6:45 p.m. 
During this time, appellant repeatedly held the revolver to his head and threatened to kill himself. Following
his arrest, police found in the house a holographic will and a note to his wife written by appellant.

Appellant testified that he had been under a great deal of stress and had "snapped." He
admitted that his story about the job was false, but denied that he had lured Mayne to his house for the
purpose of sexually assaulting her. He explained, "I needed a release. I had blown my stack, and I wanted
someone to yell at, and I had over $2,000 that I was going to offer up to her." He added, "I was going
to offer to pay her to listen, and I didn't want to make that offer in a public place, because I wasn't sure
how she would react, and I didn't want a scene." Appellant testified that he restrained Mayne with the
flexi-cuffs to "control her" and give himself time to think after she became hysterical. Appellant asserted
that he never intended to kidnap or injure Mayne, nor did he intend to cause her bodily injury. He said he
had planned to return her to her car before 10:00 a.m. because she had told him she had a college class
at that time.

Aggravated kidnapping. In order to convict appellant for this offense, the State was
required to prove that he intentionally or knowingly restrained Mayne by confining her with the intent to
prevent her liberation either by threatening to use deadly force, as alleged in count one of the aggravated
kidnapping indictment, or by secreting and holding her in a place where she was not likely to be found, as
alleged in count two. See Tex. Penal Code Ann. § 20.01(1), (2) (West 1994). Appellant does not deny
that he restrained Mayne, but contends in point of error two that the evidence is factually insufficient to
support a finding that he did so with the intent to prevent her liberation.

By challenging only the factual sufficiency of the evidence, appellant implicitly concedes that
the evidence is legally sufficient to sustain the jury's verdict. See Stone, 823 S.W.2d at 381. Clearly, the
evidence that appellant took Mayne to his house, bound her hands and feet with flexi-cuffs, and threatened
her life with a pistol supports a finding beyond a reasonable doubt that he intended to prevent her liberation,
either by secreting her or by threatening deadly force. See Brimage v. State, 918 S.W.2d 466, 475 (Tex.
Crim. App. 1994); King v. State, No. 03-97-00169-CR (Tex. App.--Austin Jan. 23, 1998, pet. filed)
(secreting and deadly force are part of mens rea).

Appellant argues that his testimony that he always intended to return Mayne to the
restaurant parking lot by 10:00 a.m. rebuts the inference that he intended to prevent her liberation. But the
law imposes no minimal requirement for restraint. It is sufficient that the interference with the complainant's
liberty is substantial. Earhart v. State, 823 S.W.2d 607, 618 (Tex. Crim. App. 1991). However long
appellant intended to keep Mayne, the jury could reasonably infer that he intended to prevent her liberation
during that time both by holding her in a place she was not likely to be found and by threatening the use of
deadly force.

Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust result. 
We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different
result is more reasonable. Clewis, 922 S.W.2d at 135; Reina v. State, 940 S.W.2d 770, 773 (Tex.
App.--Austin 1997, pet. ref'd). We must maintain appropriate deference to the jury's verdict by finding
error only when the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. 
Reina, 940 S.W.2d at 773. The jury's finding that appellant intended to prevent Mayne's liberation is not
clearly wrong or unjust. Point of error two is overruled.

Aggravated sexual assault. The indictment alleged and the jury found that appellant,
with the specific intent to commit sexual assault, lured Mayne to his house under false pretenses, assaulted
her with a stun gun, and restrained her with plastic ties; that these acts amounted to more then mere
preparation that tended but failed to effect the commission of the intended offense; and that appellant used
and exhibited a deadly weapon. See Penal Code §§ 15.01, 22.021(a)(1)(A)(i) & (a)(2)(A)(iv). Appellant
contends the evidence does not support a finding that he intended to commit sexual assault. Again, he
concedes the legal sufficiency of the evidence and challenges only the factual sufficiency.

Appellant urges that his only conduct of a sexual nature was the unbuttoning of Mayne's
shirt and the touching of her breast. Appellant did not did not remove Mayne's pants or take off his own
clothes, and never mentioned sex during the criminal episode. As before, appellant effectively asks this
Court to reweigh the evidence and substitute our judgment for that of the jury. This we cannot do. The
jury's determination that appellant intended to commit sexual assault is not so contrary to the great weight
of the evidence as to be manifestly unjust. Point of error one is overruled.

Retaliation. The retaliation indictment alleged that appellant intentionally or knowingly
threatened to kill Mayne to prevent and delay her report of crimes, the aggravated kidnapping and the
attempted aggravated sexual assault, which he knew she intended to report. See Penal Code §
36.06(a)(2)(B). Appellant contends the evidence is both legally and factually insufficient to prove that he
knew Mayne intended to report the occurrence of the alleged crimes. Appellant argues the evidence
establishes that he did not believe he had committed either aggravated kidnapping or attempted aggravated
sexual assault, and therefore could not have intended to prevent Mayne from reporting the occurrence of
those crimes. Appellant further argues that the evidence shows he believed Mayne would not report the
crimes.

Whether appellant believed that he was guilty of aggravated kidnapping and attempted
aggravated sexual assault is irrelevant. It was sufficient for the State to prove that appellant knew Mayne
intended to report the crimes and threatened her to prevent her from doing so. Appellant's contention that
he believed Mayne would not report what had happened is belied by his threat to kill Mayne and her family
if she went to the police. Viewing the evidence in the light most favorable to the verdict, the jury could
rationally conclude beyond a reasonable doubt that appellant knew Mayne intended to report his crimes. 
Viewing all the evidence equally, the jury's verdict is not clearly wrong or unjust. Points of error three and
four are overruled.

The judgments of conviction are affirmed.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: March 26, 1998

Do Not Publish
1. Penal Code amendments subsequent to the commission of the offenses are irrelevant to the appeal.



y to be found and by threatening the use of
deadly force.

Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust result. 
We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different
result is more reasonable. Clewis, 922 S.W.2d at 135; Reina v. State, 940 S.W.2d 770, 773 (Tex.
App.--Austin 1997, pet. ref'd). We must maintain appropriate deference to the jury's verdict by finding
error only when the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. 
Reina, 940 S.W.2d at 773. The jury's finding that appellant intended to prevent Mayne's liberation is not
clearly wrong or unjust. Point of error two is overruled.

Aggravated sexual assault. The indictment alleged and the jury found that appellant,
with the specific intent to commit sexual assault, lured Mayne to his house under false pretenses, assaulted
her with a stun gun, and restrained her with plastic ties; that these acts amounted to more then mere
preparation that tended but failed to effect the commission of the intended offense; and that appellant used
and exhibited a deadly weapon. See Penal Code §§ 15.01, 22.021(a)(1)(A)(i) & (a)(2)(A)(iv). Appellant
contends the evidence does not support a finding that he intended to commit sexual assault. Again, he
concedes the legal sufficiency of the evidence and challenges only the factual sufficiency.

Appellant urges that his only conduct of a sexual nature was the unbuttoning of Mayne's
shirt and the touching of her breast. Appellant did not did not remove Mayne's pants or take off his own
clothes, and never mentioned sex during the criminal episode. As before, appellant effectively asks this
Court to reweigh the evidence and substitute our judgment for that of the jury. This we cannot do. The
jury's determination that appellant intended to commit sexual assault is not so contrary to the great weight
of the evidence as to be manifestly unjust. Point of error one is overruled.

Retaliation. The retaliation indictment alleged that appellant intentionally or knowingly
threatened to kill Mayne to prevent and delay her report of crimes, the aggravated kidnapping and the
attempted aggravated sexual assault, which he knew she intended to report. See Penal Code §
36.06(a)(2)(B). Appellant contends the evidence is both legally and factually insufficient to prove that he
knew Mayne intended to report the occurrence of the alleged crimes. Appellant argues the evidence
establishes that he did not believe he had committed either aggravated kidnapping or attempted aggravated
sexual assault, and therefore could not have intended to prevent Mayne from reporting the occurrence of
those crimes. Appellant further argues that the evidence shows he believed Mayne would not report the
crimes.

Whether appellant believed that he was guilty of aggravated kidnapping and attempted
aggravated sexual assault is irrelevant. It was sufficient for the State to prove that appellant knew Mayne
intended to report the crimes and threatened her to prevent her from doing so. Appellant's contention that
he believed Mayne would not report what had happened is belied by his threat to kill Mayne and her family
if she went to the police. Viewing the evidence in the light most favorable to the verdict, the jury could
rationally conclude beyond a reasonable doubt that appellant knew Mayne intended to report his crimes. 
Viewing all the evidence equally, the jury's verdict is not clearly wrong or unjust. Points of error three and
four are overruled.

The judgments of conviction are affirmed.