Opinion issued October 17, 2002

 









 


 




In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00893-CR

____________


KENNETH ISAAC ESTRADA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 174th District Court 

Harris County, Texas

Trial Court Cause No. 819856






O P I N I O N

 A jury found appellant, Kenneth Isaac Estrada, guilty of capital murder, and the
trial court assessed his punishment at confinement for life. In two points of error,
appellant contends (1) the trial court erred in denying his motion for directed verdict
because he proved his affirmative defense of duress, and (2) the evidence was factually
insufficient to establish that he intended to kill the victim. We affirm. 

Facts

 Houston Police Officer Ronald Plotner testified that, between approximately
11:00 p.m. and 12:00 a.m. on June 7, 1999, he was dispatched to a shooting at a house. 
When he arrived, Officer Plotner discovered the body of Jose Martin Junco, the victim,
with multiple gunshot wounds to his head, back and arm.

 Jose Arenazas, appellant's friend, testified that he met appellant in February or
March of 1999 and "ran with" appellant, Fernando Valdez, and Yosvanis Valle, who
was considered the leader of the group. On June 7, 1999, a meeting took place at
Valle's apartment between Valle, Valdez, Arenazas, a man named Flaco, and appellant. 
Also present were Valle's girlfriend, Christina, and appellant's girlfriend, Anna
Sanchez. At the meeting, Arenazas had a .357 magnum revolver, Valle had a 9
millimeter pistol, and appellant had a small chrome .22 caliber pistol. During the
meeting, Valle announced that appellant had shown some weakness, and Valle wanted
to test appellant to "see if he had any heart." Appellant proposed that the men rob
Junco because appellant knew Junco kept money and narcotics at his house. Valle told
appellant that appellant must follow through with the plan or Arenazas would "take
care of him." Arenazas took this to mean that he would have to shoot appellant. 
Appellant told Valle that he was committed to going through with the robbery and he
would kill Junco if Junco recognized appellant.

 Arenazas further testified that he was assigned as the driver of the car for the
robbery and he gave his .357 revolver to appellant. Arenazas, Valdez, Flaco, Valle and
appellant drove to Junco's house and honked the car's horn. Junco came outside, and
appellant got out of the car, approached Junco, and asked him for an "eight-ball," or
$100 worth of cocaine. When Valle got out of the car, appellant pulled out his gun and
pointed it at Junco. Valdez, Flaco, Valle and appellant forced Junco back into the
house. After about five minutes, Arenazas heard multiple gunshots and saw the men
come running out of the house. On the drive back to Valle's apartment, Valle asked
appellant if he shot Junco. Appellant showed them a sock he had on his hand with a
hole in it as proof he fired his gun. Valle boasted that he shot Junco ten times, but he
was angry that they only had stolen $100 and a quarter ounce of cocaine. After the men
returned to the apartment, Arenazas took back the .357 revolver and saw that only one
shot had been fired by appellant. 

 Amy Lindgren testified that she and her one-year old daughter lived at Junco's
house and were present at the time of the murder. Lindgren was on the couch in the
living room, her daughter was sleeping in a playpen in the back bedroom, and Junco
was in the bathroom when, at about 11:00 p.m., Lindgren heard a car honk its horn,
which was usually a signal that someone wanted to buy cocaine. Junco went out the
front door and came back with his hands up with a man following behind with a gun
to Junco's back. Junco told Lindgren not to look at the men, but she looked at one,
whom she later identified as appellant. Appellant threatened Lindgren and pointed his
gun at her. A pillow was placed over her head, she was moved to the floor, and a
blanket was thrown on top of her. She then heard yelling, several gunshots, the men
running out of the house, and a car driving away. Lindgren went to the bedroom, 
found her daughter unharmed, and saw Junco, still alive, kneeling by the bed with
gunshot wounds to his back and neck. She then called 911.

 Appellant's girlfriend, Anna Sanchez, testified that she and appellant were living
with Valle at the time of the murder. During the January 7, 1999 meeting, she heard
appellant suggest robbing Junco. She had previously heard Valle tell appellant that if
he was going to stay in his house, he would have to rob people and do whatever Valle
told him to do. Sanchez testified that appellant told her that Valle had previously
threatened to kill appellant if he did not do what Valle wanted. After the shooting,
appellant told Sanchez he shot his gun at Junco but was not certain that the bullet had
hit Junco. After appellant was in jail, he asked Sanchez to lie about his activities on
the night of the murder, make up an alibi that he was with another man, and state that
she and appellant were in a common law marriage. Although he asked her to refuse to
testify, she testified voluntarily. Appellant did not testify.

Directed Verdict

 In his first point of error, appellant argues that he proved his affirmative defense
of duress by a preponderance of the evidence and that the trial court erred in denying
his motion for a directed verdict because Valle threatened him with death if he did not
participate in the robbery.

 We treat a point of error complaining about a trial court's denial of a motion for
directed verdict as a challenge to the legal sufficiency of the evidence. Williams v.
State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). When determining the sufficiency
of the evidence to disprove a defendant's statutory defense, the State is not required to
affirmatively produce evidence that refutes defendant's statutory defense, but rather to
prove its case beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910, 913 (Tex.
Crim. App. 1991). The jury is free to reject or accept defensive evidence. Id. at 914. 
Evidence is legally sufficient when, viewed in the light most favorable to the verdict,
a rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). 

 Duress is an affirmative defense that applies when an accused engages in the
proscribed conduct because he is compelled to do so by threat of imminent death or
serious bodily injury to himself or another. Tex. Pen. Code Ann. § 8.05(a) (Vernon
1994). Compulsion exists only if the force or threat of force would render a person of
reasonable firmness incapable of resisting the pressure. Shaw v. State, 874 S.W.2d
115, 119 (Tex. App.--Austin 1994, pet. ref'd). The fact that a defendant is taking an
order from another is not sufficient to prove the defense of duress. Cameron v. State,
925 S.W.2d. 246, 250 (Tex. App.--San Antonio 1995, no pet.). Moreover, the defense
of duress is unavailable if a defendant "intentionally, knowingly, or recklessly placed
himself in a situation in which it was probable that he would be subjected to
compulsion." Tex. Pen. Code Ann. § 8.05(d) (Vernon 1994).

 The evidence presented at trial raised a fact question as to defendant's claim of
duress. Although Valle ordered appellant to participate in the robbery, or Arenazas
would "take care of him," the evidence revealed that it was appellant who formulated
the robbery plan and was committed to proving he had "heart." Arenazas testified that
appellant wanted to rob Junco because appellant knew that it would be a "lick," or an
easy job. Moreover, the record indicates that appellant had already made up his mind
to see the robbery through to completion and intended to kill Junco if necessary. 
Appellant later asked Sanchez to lie about his involvement in the murder and to make
up an alibi.

 A rational jury could have rejected appellant's duress defense and reasonably
found beyond a reasonable doubt that appellant intended to kill Junco. Thus, we hold
the trial court did not commit error in denying appellant's motion for a directed verdict. 

 We overrule point of error one.

Factual Sufficiency of the Evidence

 In his second point of error, appellant argues that the evidence was factually
insufficient to support his conviction for capital murder because a preponderance of the
evidence showed appellant lacked the specific intent to kill Junco.

 We review factual sufficiency by examining all of the evidence neutrally and
asking whether proof of guilt is so obviously weak or greatly outweighed by contrary
proof as to indicate that a manifest injustice has occurred. King, 29 S.W.3d at 563. We
will reverse a fact finder's determination only if a manifest injustice has occurred. Id. 
In conducting our analysis, we may disagree with the jury's determination, even if
probative evidence supports the verdict, but we must avoid substituting our judgment
for that of the fact finder. Id.

 Appellant contends that he only "appeared" to participate in the robbery and his
mere presence does not make him guilty as a party. Additionally, appellant contends
that because he fired only one shot, compared to the multiple shots fired by Valle, his
participation was minimal. Finally, appellant argues that, since he was under duress,
he did not intend to kill Junco, but instead acted to save his own life. 

 Viewing all of the evidence neutrally, it is undisputed that Valle told appellant
he had to follow through with the robbery or Arenazas "would take care of him." 
However, the jury could have found that appellant participated in the robbery and
murder with the intention to rob and kill Junco in order to prove himself to Valle and
the other members of the group. The State presented evidence that appellant chose
Junco as the victim and formulated the robbery plan. Arenazas testified that appellant
told Valle that he was committed to the robbery and he would kill Junco if Junco
recognized appellant. Appellant knew Junco and lured him out of the house. 
Appellant was the first to draw his gun, and he forced Junco back into the house at
gunpoint. Lindgren, Junco's girlfriend, testified that when she looked at appellant, he
told her "This is what happens to a dope man's bitch," and pointed his gun at her. It
is also undisputed that appellant shot his firearm at Junco.

 Appellant submits that, under Reina v. State, 940 S.W.2d 770 (Tex.
App.--Austin 1997, pet. ref'd), no intent to kill was shown because appellant acted not
to cause the death of Junco, but only to save his own life. Reina is distinguishable from
the present case because Reina acted to separate himself from a group who set fire to
a homeless man, while Reina waited out of sight in his car. Here, appellant actively
participated in the planning and execution of the robbery and in the shooting of Junco.

 Based on the evidence, the jury could have found that appellant intended to kill
Junco and was not under duress at the time of the murder. To the extent that any of the
evidence in this case may be viewed as contradictory, a jury conviction is not
manifestly unjust merely because the jury resolved conflicting views of the evidence
in favor of the State. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

 Thus, we hold the evidence was factually sufficient to support appellant's
conviction.

 We overrule appellant's second point of error.Conclusion

 We affirm the judgment of the trial court.

 



 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Radack.

Do not publish. Tex. R. App. P. 47.