# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-01-00679-CR

**Luis Govea, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-00-458, HONORABLE JACK ROBISON, JUDGE PRESIDING

A jury found Appellant Luis Govea guilty of felony driving while intoxicated. *See* Tex. Pen. Code Ann. ' ' 49.04(a), 49.09(b) (West Supp. 2002). The trial court assessed punishment at forty years= imprisonment.[1] In one point of error, Govea alleges that the evidence is factually insufficient to support his conviction. We will affirm the judgment.

### FACTUAL BACKGROUND

---

[1] Because of Govea=s prior convictions, twenty-five years was the minimum term for which he could be sentenced if convicted of this offense.

At approximately 7:00 p.m. on the evening of June 16, 2000, Govea arrived at his daughter=s house on East Third Street in Austin, where Govea=s cousin Martin Salgado and several family friends planned to spend the evening. Over the course of the evening, Govea consumed an unknown quantity of beer. At trial, Salgado testified that he felt Govea was Aa little bit intoxicated@ when Govea went to sleep around 11:00 p.m. While Govea was sleeping, a family friend known only as Jerry asked Govea if he could borrow the keys to Govea=s car to turn on the radio. Govea agreed, and Salgado testified that he believed Jerry spent the remainder of the evening in Govea=s car listening to music and drinking beer. Govea awoke around 2:00 a.m. complaining of a headache and chest pains, and Salgado watched as Govea Atook some pills@ and went back to sleep. Salgado awoke around 5:00 a.m. when he heard Govea leaving to drive back to San Marcos for work. Govea neither slurred his speech nor stumbled when he walked, and Salgado felt that Govea=s behavior was normal. Salgado stated that Govea still smelled of the beer he had been drinking the evening before but otherwise appeared competent to drive. After Govea drove off, Salgado thought about going back to bed but changed his mind after ten minutes and decided to follow Govea to San Marcos. Salgado eventually caught up to Govea=s car and began following him southbound on Interstate 35. Salgado stated that the only time he saw Govea swerve was as Govea was being pulled over by a police car.

Around the same time, 37-year-old Darrell Marcuse was also driving southbound on I-35 through the city of Austin. Marcuse testified that as he approached the intersection of I-35 and Highway 290 he came upon a dark colored car that was driving erratically. The car could not stay in one lane and swerved toward Marcuse=s vehicle several times. Marcuse attempted to evade the car, first by slowing

**2**

down and again by speeding up, but was unsuccessful in both attempts. The car then swerved into Marcuse=s lane for a third time, cutting Marcuse off and forcing him to slam on his brakes to avoid being struck. After allowing the car to pass, Marcuse followed behind it as it continued southbound on I-35. Concerned for his safety and the safety of other motorists, Marcuse called 911 on his cellular phone to report the incident. Marcuse testified that he had never before found it necessary to call the police, but that the danger posed by the car was so great he felt he had no other choice. Marcuse gave the 911 dispatcher a description of the car and assisted law enforcement officers by following behind the car with his hazard lights activated. Marcuse remained in contact with the dispatcher until a patrol car intervened and began following the suspect car. Marcuse testified that he observed the patrol car identify and pull over the correct vehicle.

Stephen McCarty was the Kyle City Police Department officer dispatched to locate the reckless driver on Interstate 35. Officer McCarty testified that he was able to locate the suspect car because Marcuse had activated his hazard lights and was following behind it. McCarty, whose vehicle was equipped with a video camera, pulled in front of Marcuse and followed behind the suspect car for approximately two miles. During this time, McCarty observed (and his in-car video camera recorded) the car commit several traffic violations, including: failing to maintain a single lane, following too closely behind another vehicle, and causing other vehicles on the road to brake and move in various ways to avoid being struck. In response to this reckless driving, McCarty stopped Govea=s car. After pulling over, Govea got out of his car and approached Officer McCarty=s vehicle. McCarty noticed that Govea seemed to have some difficulty walking. As Govea got closer, McCarty detected a Avery strong odor@ of alcohol. McCarty

**3**

then asked Govea whether he had consumed any alcoholic beverages. Govea admitted he had been drinking the night before.

McCarty then asked Govea to perform three field sobriety tests, all of which Govea failed. Specifically, Govea (1) was unable to successfully walk heel-to-toe in a straight line while counting from one to nine; (2) was twice unable to recite the alphabet; and (3) failed to remove his index finger from touching his nose during the index finger test. At some point during the heel-to-toe test, Govea informed McCarty that a previous leg injury and vision problems prevented him from completing the test. Although McCarty did not feel that such medical problems would prevent Govea from walking in a straight line, McCarty nevertheless took Govea=s alleged injuries into account and modified the second test to accommodate them by asking Govea to recite the alphabet without requiring him to balance on one leg. When Govea was unable to recite more than a few letters of the alphabet, he told McCarty that he did not know the alphabet. McCarty proceeded to the index finger test. McCarty asked Govea to stand with his head tilted back and his arm outstretched to one side. McCarty told Govea to touch the tip of his index finger to his nose and then return it to his side. When Govea failed to return his finger to his side, McCarty again instructed Govea that he would not be told when to release his finger from his nose, but he was to return it to his side. Only after McCarty repeated the instruction for a third time did Govea return his arm outstretched to his side. McCarty testified that the purpose of the index finger exam is to test an individual=s judgment, and that an individual successfully completes the exam when he touches his nose and returns his arm to an outstretched position in a reasonable time. Based on his training and experience, McCarty determined that Govea failed

**4**

the index finger test because he did not return his arm to his side in a reasonable time. McCarty then obtained Govea=s consent to search his car. The search revealed several empty beer cans in the front floorboard, including one beer can that was cold to the touch and within Govea=s immediate reach.

Officers Sam Stock and Pedro Hernandez were also dispatched to the scene to assist McCarty with the traffic stop. During the stop, Officer Stock spoke with Govea and observed his appearance and demeanor. Stock testified that: Govea=s speech was slow and slurred, his eyes appeared red and droopy, a strong odor of alcohol emitted from his breath as he spoke, and he was swaying slightly during their conversation. Officer Hernandez likewise testified that he detected a vague odor of alcohol about Govea=s person and that Govea slurred his speech and was unable to maintain his balance. McCarty=s in-car video captured the conversations between the officers and Govea, but the tape did not show Govea swaying or stumbling.

Based on Govea=s driving, demeanor, and failure to perform the field sobriety tests, McCarty determined that Govea was intoxicated and placed him under arrest for driving while intoxicated. McCarty then took Govea to the Hays County Sheriff=s Department interview room, where Govea declined to take a breath test, refused to perform further field sobriety tests, and refused to appear in the line of view of the video camera monitoring the room. While in custody, Govea indicated that he was sick and in need of medical attention; he also requested to speak with an attorney.

## DISCUSSION

5

On appeal, Govea complains that the evidence was factually insufficient to establish that he was intoxicated. He contends that the testimony tending to establish his intoxication is untrustworthy and that the contrary evidence is overwhelming. We disagree.

A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). When conducting a factual sufficiency review, we do not review the evidence in the light most favorable to the verdict. Instead, we consider all of the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.CAustin 1992, no pet.). We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *See Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Reina v. State*, 940 S.W.2d 770, 773 (Tex. App.CAustin 1997, pet. ref=d). Moreover, the circumstantial evidence of guilt need not exclude every reasonable alternative hypothesis to be sufficient. *See Orona*, 836 S.W.2d at 322 n.2. We must maintain appropriate deference to the jury's verdict by setting it aside for factual insufficiency only when the record clearly indicates that a finding of guilt beyond a reasonable doubt is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Johnson*, 23 S.W.3d at 9-10; *Reina*, 940 S.W.2d at 773.

The record contains ample evidence of Govea=s intoxication at the time he operated his vehicle. The record reflects that Govea was driving erratically. Marcuse observed several instances of

**6**

unsteady, unsafe driving, and Officer McCarty witnessed Govea commit three traffic violations over approximately two miles of highway. The videotape from McCarty=s in-car camera recorded Govea=s erratic driving and was played for the jury. Govea seemed to have difficulty walking toward McCarty=s vehicle. Govea admitted to having consumed an unspecified amount of beer earlier in the evening. Officers Stock and Hernandez noticed that Govea=s eyes were red and droopy, his speech was slow and slurred, and his balance was unsteady. All three officers agreed that Govea smelled of alcohol. Govea failed to successfully perform three separate field sobriety tests. McCarty found a recently emptied beer can within reach of the driver=s seat, in addition to several other empty beer cans in the front floorboard of Govea=s car. Once in custody, Govea was generally uncooperative and unresponsive. He stood against the wall out of view of the video recorder and refused to perform field sobriety tests on camera. He did not give a breath sample and refused to sign the statutory warning form outlining the consequences of a failure to submit to a breath test. McCarty, Stock, and Hernandez each believed that he was intoxicated.

Govea insists that this evidence of intoxication is so obviously weak and so greatly outweighed by contrary proof as to make the jury=s verdict clearly wrong and unjust. He claims that evidence presented at trial undermined the testimony of the State=s witnesses. Govea argues that the videotape from McCarty=s car, in which Govea at no time appears to stagger or stumble, contradicts the officers= testimony that Govea swayed and appeared to have trouble keeping his balance during the traffic stop. In addition, Govea argues that the evidence at trial, namely the testimony of Martin Salgado, indicates that Marcuse incorrectly identified Govea=s vehicle as the reckless car on the night in question, since Marcuse=s testimony that the encounter occurred near the intersection of Highway 290 and Interstate 35

**7**

conflicts with Salgado=s testimony that Govea would have entered the Interstate well south of that intersection. Govea argues that these conflicts and contradictions render the State=s witnesses so untrustworthy that their testimony should be discounted.

Along the same lines, Govea contends that the State=s evidence does not overcome the reasonable alternative explanations for Govea=s behaviors offered by the defense at trial. Although Govea admits he had consumed beer the evening before, he insists that medical conditions unrelated to intoxication can explain his appearance and behavior on the morning of his arrest. He argues that his unsuccessful performance of the field sobriety tests can be explained by past injuries to his leg and eyes, illness, and fatigue. McCarty=s testimony indicates that during the tests, Govea complained that he had vision problems and a leg injury that were preventing him from completing the tests. Govea=s cousin confirms that Govea had received a gun-shot wound to his leg and had problems with at least one of his eyes. In the DWI interview room, Govea told officers that he felt sick and was in need of medical attention. These complaints are supported by Salgado=s testimony that Govea woke up in the middle of the night with head and chest pains. Salgado also stated that he felt Govea did not get enough sleep on the night of the arrest. In addition, Govea argues that Salgado=s testimony that the beer cans in Govea=s car belonged to Jerry establishes that the cans neither belonged to nor were consumed by Govea. This Court must decide whether all of the record evidence, including that supporting Govea=s alternative hypothesis, weighs so heavily against the verdict as to make it clearly wrong and unjust. We hold that it does not.

When conducting a factual sufficiency review, we may not substantially intrude upon the jury=s role as the sole judge of the weight and credibility of witness testimony. *Johnson*, 23 S.W.3d at 7. It

was the jurors= duty to consider the witnesses= credibility and determine the weight to be given their testimony, and it was the jurors= duty to resolve any variances, contradictions, or conflicts in the evidence. While the videotape may show that Govea did not stumble, wobble, or weave, and while there is evidence that Govea had suffered leg and eye injuries in the past, this evidence simply makes the case a closer call. It does not greatly outweigh the proof of Govea=s guilt. Salgado=s testimony and his explanations for Govea=s behavior do not invalidate or overwhelm the State=s contrary evidence. Govea=s alternative hypothesis might be deemed reasonable, but when considered alongside all of the evidence it is not enough to cause us to reverse the jury=s verdict. *See Sneed v. State*, 964 S.W.2d 764, 766 (Tex. App.CTexarkana 1998, no pet.) (where record was devoid of evidence showing injuries caused by car accident would mimic symptoms of intoxication, evidence of accident itself, slurred speech, red eyes, odor of alcohol, balance difficulties, and empty containers of alcohol determined legally and factually sufficient to support guilty verdict).

After impartially examining all of the evidence, we conclude that the jury=s verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Our neutral review of all of the evidence, both for and against the jury=s verdict, fails to show that the proof of Govea=s guilt is so obviously weak as to undermine confidence in the jury=s determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. We cannot say that the verdict was contrary to the overwhelming weight of the evidence when the evidence presented at trial showed that Govea: (1) failed to drive his vehicle within a single lane and caused other drivers to engage in evasive maneuvers; (2) smelled of alcohol; (3) admitted he had consumed beer earlier that evening; (4) had slow,

**9**

slurred speech and red, droopy eyes; (5) could not successfully perform three field sobriety tests; (6) had empty beer cans cold to the touch within his reach; and (7) refused to give a breath sample or perform field sobriety tests on videotape. We find that the evidence is factually sufficient to support the jury=s verdict, and therefore overrule Govea=s point of error.

## CONCLUSION

Because we find the evidence factually sufficient to support the verdict, we affirm the trial court=s judgment.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: November 7, 2002

Do Not Publish

10