# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00668-CR

**Martin Gonzalez a/k/a Martin Gonzalez Escamilla, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 0996134, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

Appellant Martin Gonzalez was indicted for the murders of Sylvia Garcia, Maria Flores, and Olivia Estrada pursuant to the same scheme or course of conduct. *See* Tex. Pen. Code Ann. § 19.03(a)(7)(B) (West 1994). At trial, the district court authorized appellant's conviction for capital murder if the jury found that he murdered all three women, or any two of them, under the requisite circumstances. The jury returned a general verdict of guilty. Because the jury later answered the mitigation issue affirmatively, the district court assessed punishment at imprisonment for life. *See* Tex. Code Crim. Proc. Ann. art. 37.071, §§ 2(e)(1), (g) (West Supp. 2001).

Appellant does not challenge the sufficiency of the evidence showing that he murdered the three women. He contends, however, that the evidence is legally and factually insufficient to

sustain the finding that the murders were committed pursuant to the same scheme or course of conduct, and that section 19.03(a)(7)(B) is unconstitutionally vague as applied to him. He also urges that the court should have granted a mistrial when the State elicited hearsay testimony from a witness. We overrule these contentions and affirm the judgment.

## BACKGROUND

### *Sylvia Garcia*

Appellant married Sylvia Garcia in Monclova, Mexico, in May 1994. She was forty-four and divorced from her first husband. Appellant moved to Austin late that year, and Garcia followed in March 1995. Garcia telephoned her daughter in Monclova almost daily, and seemed nervous and unhappy. The last call to her daughter came on June 8, which also was when Garcia's last letter was received. Garcia was last seen at the Austin residence she shared with appellant on June 24, 1995. Appellant moved from this residence the following day, taking all the furnishings he and Garcia had brought to it.

Human skeletal remains were found in a nearby vacant lot in late September 1995, but the body was not positively identified until 2000, when DNA tests confirmed that the remains were those of Sylvia Garcia. The cause of death was determined to be blunt force trauma to the skull, which had multiple fractures.

### *Maria Flores*

Maria Flores, a native of Panama, moved to Austin in 1994 with two of her children. She met appellant in 1998 when she was fifty-three, and soon began living with him. Flores's

daughter testified that appellant was a jealous man and was physically abusive to her mother. Flores worked at two jobs and was forced to give all her money to appellant. Flores, accompanied by appellant, left for work on May 20, 1998, and never returned. Flores's daughter said that appellant appeared nervous when she asked him if he knew the whereabouts of her mother. Appellant reported Flores's disappearance to the police, but the case was closed in June 1998.

Maria Flores's skeletal remains were found in a field in southeast Austin on November 22, 1999. The medical examiner found evidence of at least fifteen blunt force injuries to the head and face caused by an object such as a hammer.

*Olivia Estrada*

Olivia Estrada, who was fifty-four years old, met appellant at a dance hall in 1998 and formed a relationship with him. Appellant proved to have a violent temper, and Estrada told her doctor that appellant threatened to choke her if she tried to leave him. Estrada was afraid to call the police, fearing it would provoke appellant to greater violence. Estrada's family grew increasingly concerned for her safety, and in October 1998 urged her to obtain a restraining order against appellant. They also devised a plan by which members of the family would be with Estrada when she broke up with appellant.

Estrada's daughter called the police on October 29, 1998, after Estrada did not answer her telephone for two days and family members found her house unoccupied. Estrada's hall carpet was soaked with water, and blood spatters were found on a bedroom doorframe, in the hallway, and on the kitchen door. Blood and a ring belonging to Estrada were found in the carport, next to her car.

Olivia Estrada's skeletal remains were found in a field in Bastrop County on October 18, 1999. The skull showed evidence of blunt force trauma to the forehead and just above the right eye. Estrada had also been shot in the back of the head.

Appellant was arrested for the kidnapping of Olivia Estrada in November 1998. Further police investigation connected him to Sylvia Garcia and Maria Flores. Appellant was indicted for capital murder after the bodies of the three women were found and identified.

## DISCUSSION

A person commits capital murder if he murders more than one person "during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct." Tex. Pen. Code Ann. § 19.03(a)(7)(B). Appellant contends the evidence is legally and factually insufficient to support the finding that he murdered the three victims pursuant to the same scheme or course of conduct. He further argues that section 19.03(a)(7)(B) fails to provide sufficient notice as to when two or more murders constitute "the same scheme or course of conduct," and for that reason is unconstitutionally vague. To prevail on the latter claim, appellant must demonstrate that the statute is vague as it applies to his conduct. *Corwin v. State*, 870 S.W.2d 23, 27 (Tex. Crim. App. 1993); *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989).

The defendant in *Corwin*, over a period of nine months, abducted, sexually assaulted, and fatally stabbed two women, and fatally stabbed a third woman when his attempt to abduct her failed. *Corwin*, 870 S.W.2d at 27. There was also evidence that the defendant had engaged in similar conduct twelve years before and one year after the alleged offenses, but in each of those instances the victim had lived. *Id.* The court wrote:

4

In abducting, raping, and killing or attempting to kill five women in more or less the same way over the course of some thirteen years, . . . [Corwin] can reasonably be said to have engaged in "a regular mode or pattern of . . . behavior." The evidence shows that [the three victims] were each murdered pursuant to this same "regular mode or pattern of behavior." Perhaps in hypothetical cases, as the time and distance between murders committed during different transactions increases, and as the actor's motive or *modus operandi* vary, it will become more difficult for putative defendants and law enforcement agencies to say with certainty that the murders occurred "pursuant to the same . . . course of conduct." But [Corwin] demonstrates no such uncertainty on the present facts, and the evidence was sufficient for a rational jury to find it was in fact "pursuant to the same . . . course of conduct that" [Corwin] committed these murders. . . . Whatever doubt may exist at the periphery, we think that the "core" conduct proscribed by [the statute] is clear enough, and that [Corwin's] conduct fell within it.

*Id*. at 28-29 (footnote omitted).

Appellant argues that to uphold a conviction under section 19.03(a)(7)(B) there must be evidence that each murder was committed with a similar motive and in a similar way. While *Corwin* does indicate that similarity of motive and method are relevant considerations, the opinion also cautions that the statute does not necessarily require a showing that the accused acted according to some "over-arching objective or motive." *Id*. at 28. We believe that it is appropriate to examine all the circumstances surrounding the alleged murders, rather than to focus on only the two factors emphasized by appellant.

We believe that in forming intimate relationships with three middle-aged women and then killing them and disposing of their bodies in more or less the same way over the course of five years, appellant can reasonably be said to have engaged in a similar course of conduct or regular pattern of behavior. This is particularly true with regard to Maria Flores and Olivia Estrada: the two women were approximately the same age; each met appellant in 1998 and formed substantially

identical relationships with him; appellant was threatening and abusive to each; and each was murdered within a space of only five months. All three victims suffered multiple blows to the head with a blunt object, and appellant left each victim's body in a vacant lot or field. We conclude that appellant had sufficient notice that his conduct was proscribed as a capital offense because it was committed pursuant to the same course of conduct, and that the jury could rationally find beyond a reasonable doubt that appellant committed these murders pursuant to the same course of conduct. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). Points of error one and two are overruled.

Appellant's argument in support of his factual insufficiency claim does not point out any particular evidence supporting the conclusion that he did not murder Garcia, Flores, and Estrada pursuant to the same course of conduct. Instead, appellant merely refers to his previous arguments regarding the constitutionality of the statute and the legal sufficiency of the evidence. In effect, appellant asks this Court to reweigh the evidence and substitute our verdict for that of the jury.

Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust result. We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Reina v. State*, 940 S.W.2d 770, 773 (Tex. App.—Austin 1997, pet. ref'd). We must maintain appropriate deference to the jury's verdict by finding error only when the record clearly indicates that

6

the verdict is wrong and manifestly unjust. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *Reina*, 940 S.W.2d at 773. A decision is not manifestly unjust simply because the fact-finder resolved conflicting views of the evidence in the State's favor. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd). Point of error three is overruled.

In his last point of error, appellant contends the district court should have declared a mistrial when hearsay testimony was elicited from a State witness. Detective Robert Merrill was the lead investigator in this case. He was asked by the prosecutor to describe the "consistencies among the disappearances and murders of these women." Merrill answered, "Well, he was romantically involved with all three of them. He had lived with all three of them. We had indications that he showed signs of jealousy if they talked with anyone." Appellant objected to the latter statement as being based on hearsay. The objection was sustained and the jury was instructed to disregard, but appellant's mistrial motion was overruled.

In the vast majority of cases in which improper testimony is elicited, an instruction to disregard the testimony will be deemed to cure the error. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). An instruction to disregard will be inadequate only in extreme cases where it appears that the evidence was clearly calculated to inflame the jurors and was of such a character as to suggest the impossibility of withdrawing the harmful impression from their minds. *Id*. The instant cause is not such an extreme case, and the district court did not abuse its discretion by denying the mistrial after instructing the jury to disregard. In light of other testimony regarding appellant's jealous behavior, any residual prejudice was clearly harmless. Tex. R. App. P. 44.2(b). Point of error four is overruled.

7

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed:   October 18, 2001

Do Not Publish