

## NUMBER 13-19-00519-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

ANTOINE BENSON,                                                                              Appellant,

v.

THE STATE OF TEXAS,                                                                        Appellee.

### On appeal from the 274th District Court
### of Hays County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Chief Justice Contreras**

After a jury trial, appellant Antoine Benson was convicted of burglary of a building, a state jail felony (Count I); possession of 400 grams or more of oxycodone, an offense punishable by ten to ninety-nine years or life in prison (Count II); and engaging in organized criminal activity, a third-degree felony (Count III). *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(f); TEX. PENAL CODE ANN. §§ 30.02(c)(1), 71.02(a). The trial court

found two enhancement paragraphs true, and appellant was sentenced to concurrent prison terms of twenty, forty, and forty years for the respective offenses.[1] On appeal, appellant contends that (1) the trial court erred by denying him a hearing on his motion for new trial, and (2) the burglary conviction violated his double jeopardy rights. We affirm as modified.[2]

## I.    BACKGROUND

The indictment alleged that, on or about February 3, 2017, appellant: (1) intentionally or knowingly entered MedPark Pharmacy in San Marcos without the consent of its owner, Charles Villarreal, and attempted to commit or committed theft of property therein; (2) intentionally or knowingly possessed 400 grams or more of oxycodone; and (3) conspired to commit burglary as a member of a criminal street gang. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(f); TEX. PENAL CODE ANN. §§ 30.02(c)(1), 71.02(a).[3] Later,

---

[1] At sentencing, the trial court orally pronounced appellant's sentence as "40 years in the Texas Department of Criminal Justice, Institutional Division" without specifying which count(s) the sentence applied to. Forty years' imprisonment is outside the range of legal punishments for Count I, a state-jail felony enhanced to a second-degree felony. *See* TEX. PENAL CODE ANN. § 12.33(a) (stating that a second-degree felony is punishable by a prison term of two to twenty years). However, the written final judgment for Count I states that appellant's sentence is twenty years' imprisonment, which is within the statutory range. *See id.* We construe the trial court's oral pronouncement of sentence as applying to all three counts; therefore, we have jurisdiction in this appeal over all three counts. *Cf. Meachum v. State*, 273 S.W.3d 803, 806 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (noting that oral pronouncement of sentence in the defendant's presence is a prerequisite to appellate jurisdiction); *see State v. Roberts*, 940 S.W.2d 655, 657 (Tex. Crim. App. 1996) (noting that we may address jurisdictional issues sua sponte), *overruled on other grounds by State v. Medrano*, 67 S.W.3d 892, 894 (Tex. Crim. App. 2002).

We note that an oral sentence generally controls over a written sentence when the two conflict, and that the solution in such a situation is ordinarily to reform the written judgment to conform to the sentence that was orally pronounced. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). However, appellant does not complain about the trial court's oral pronouncement of an illegal sentence, nor does he complain about the discrepancy between the oral and written sentences—and those matters are not jurisdictional so as to require a sua sponte review. Accordingly, we do not address those issues here.

[2] This appeal was transferred from the Third Court of Appeals in Austin pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] Count III also included a second paragraph alleging that appellant committed burglary with the intent to establish, maintain, or participate in a combination and in the profits of a combination of three or more people. *See* TEX. PENAL CODE ANN. § 71.02(a). That paragraph was not included in the jury charge.

the State filed notice of its intent to seek enhancement of punishment on the basis that appellant had been convicted of aggravated robbery in 2003 and felony possession of a controlled substance in 2011. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 12.425(b).

At trial, Villarreal testified that he is a pharmacist and has owned MedPark Pharmacy for thirty years. He explained that the most "dangerous" narcotics at the pharmacy are kept in a large safe in a back room, to which only he and a technician had access. In the early hours of February 3, 2017, Villarreal received a notification from his burglar alarm system that there had been a break-in at the pharmacy. He accessed the pharmacy's video surveillance system and called the police. Video recordings from the surveillance system were entered into evidence and played for the jury. The videos initially showed three individuals inside the pharmacy, including one person wearing a hoodie and holding a crowbar leaning up against a steel door to the back of the pharmacy. The door appears open even though, according to Villarreal, it is usually locked. Later, a furniture dolly can be seen in the video. Villarreal said there appeared to be five individuals struggling to obtain the safe. Eventually, they were able to remove the safe out from the back door. Villarreal said that there were 410 grams of oxycodone, in labeled bottles, in the safe at the time it was removed. He did not believe it would be possible for someone to know what was inside the safe without opening it.

Nine different San Marcos Police Department officers testified regarding their response and investigation. Marcus Smith testified he responded to an alarm call from MedPark Pharmacy at around 3:55 a.m. on February 3, 2017. On his way to the pharmacy, he observed a white vehicle stopped in the middle of the Interstate 35 frontage road. When Smith activated his overhead lights, the vehicle began to drive away slowly;

3

then, it stopped and two individuals ran out of the passenger side. The driver then also exited the vehicle and started running. Smith detained the driver, who was later identified as Calvin Clayton. One of the passengers was identified as James Jackson. A recording obtained from Smith's bodycam was entered into evidence and played for the jury.

Lance Cyrus testified that when he arrived at the pharmacy, the back door had been forced open. There was a closed safe outside the building, along with some medical supplies scattered on the ground. Once backup arrived, officers entered and secured the building. Casey Tennant testified that he arrived on scene at the same time as Cyrus. In front of the pharmacy, Tennant observed a dark Dodge pickup truck with fabric obscuring the license plates. The truck's engine was running but no one was inside. Tennant removed the keys from the ignition and obtained the license plate information.

Photos taken by officers inside the pharmacy were entered into evidence, including several showing a crowbar on the floor as well as debris and "drag marks" from where the safe was removed. Tennant later observed the surveillance video from inside the pharmacy and took pictures of the five suspects to give to other officers; those photos were also entered into evidence. Tennant stated that the suspects were wearing "distinctive" clothing, including one suspect who was wearing a "distinctive style hoodie sweatshirt" with "white lettering on both sides of his shoulder" and a "white emblem on the chest." Tennant stated that appellant and Darion Williams were among the suspects in the surveillance video.

Stephen Sarver stated that he arrived on the scene and helped to clear the pharmacy building. Upon hearing on his radio that there were "four black males fleeing on foot," he got in his patrol car and began pursuit. When he got to Broadway, Sarver saw

4

"a subject run across the road" near the intersection with Parker Drive; he then stopped the "subject," who was "walking in somebody's front lawn with his hands in his pockets." The individual identified himself as Tyrone Anderson. Sarver determined that Anderson was the registered owner of the Dodge truck which had been left idling in front of the pharmacy.

Daniel Crook testified that he assisted in the arrest of Darion Williams. Crook stated a black hoodie sweatshirt with white logos was found near where Williams was apprehended. Crook stated that the hoodie appeared to be the same one worn by one of the suspects in the surveillance video.

Andrew Sparenberg stated that he recovered evidence from the truck parked in front of the pharmacy, including cell phones, a crowbar, a bag containing various tools, and the two black pieces of cloth which were being used to cover the license plates. Sparenberg testified that Anderson had a third piece of black cloth on his person when he was arrested; the three pieces of cloth "fit together like a jigsaw puzzle" to make a complete T-shirt.

Donald Lee testified that he is a canine handler, and he reported to the scene that night.[4] His patrol dog alerted to a scent in a carport at a house on Patricia Street. He advised another canine handler to search the area from Patricia Street to Interstate 35. In doing so, the other officer located a suspect, who proceeded to run across the

---

[4] Lee agreed that it is easier for a dog to search for a suspect when there are fewer people around, and he explained:

> In the initial stages of training a police canine to search for people, you're basically teaching him to locate human scent, follow that human scent to source and that's the person.

> As a police canine has been on the street for a while, what he learns is there's a difference in the scent between a normal person and somebody who has some kind of guilt associated with them. And, in general, we just call that "guilt scent."

interstate. Later, Lee's patrol dog alerted to a scent near some railroad tracks next to an open field across the interstate. Eventually, Lee saw "a person lying down with tennis shoes on and there's a reflection off the tennis shoes." Lee's bodycam video was also entered into evidence and played for the jury. Lee commanded the suspect to stay on the ground, but the suspect got up and started to move, so Lee told his patrol dog to bite the suspect. The suspect put his hands up and "gave up," so the dog did not bite. The suspect was identified as appellant.

The State sought to introduce the testimony of Patrick Aubry, a San Marcos Police Department detective, as an expert on criminal street gangs. On voir dire, Aubry testified that he is part of a regional violent crimes task force and has received training specifically regarding criminal street gangs, including "state-wide training" "run by the Texas Gang Investigators Association." Aubry explained that he has full access to TexGang, a database of gang membership used by law enforcement. Aubry was familiar with the gang known as "Fifth Ward Circle"; he said it is a Houston-based gang which "comes up in numerous bulletins and training information that is distributed statewide and nationwide" and is "known to be active in at least 25 states." Aubry said that Fifth Ward Circle has "well over 500 members" and that "they operate in three- to six-man crews to burglarize buildings[—i]n particular, pharmacies. They are looking for controlled substances and illicit substances that they can then sell on the street for a profit." Aubry stated that, in determining if a suspect is a gang member, he will look at whether there has been a judicial finding on the matter, whether an admission was made, whether the suspect has gang tattoos or frequents known gang locations, and whether the suspect has participated in crimes with other gang-affiliated individuals. He explained that he has never previously

6

been designated as a gang expert in a court proceeding.

Aubry testified that appellant did not admit to being a member of Fifth Ward Circle. However, appellant was "documented at the time by the Houston Police Department" as a member of that gang. Aubry opined that the Houston Police Department was a reliable source, though he conceded he did not determine which Houston police officer, specifically, entered appellant into the database as a Fifth Ward Circle member. He later stated that he spoke with Michael Burdick of the Houston Police Department, who confirmed that appellant is part of the gang. Aubry noted that appellant has three tattoos—including one stating "Fifth Ward" across his abdomen—which indicated he was part of the gang. Aubry opined that appellant was "undoubtedly" a member of the Fifth Ward Circle. He stated that Calvin Clayton and James Jackson were also documented as members of that gang.

The trial court admitted Aubry's expert testimony over appellant's objection. In testimony before the jury, Aubry explained that he was involved in the case as a detective. He noted that appellant was the only suspect that was found on the opposite side of the interstate as the pharmacy, and that there was only one suspect who was seen running across the interstate. Aubry stated that appellant was wearing clothes which matched one of the suspects in the pharmacy surveillance video. He opined that there were six people involved in the burglary, including Clayton, who did not enter the pharmacy but acted as a lookout.

The jury found appellant guilty as charged, and he was sentenced as set forth above. Appellant filed a pro se motion for new trial, which was denied by operation of law without a hearing. *See* TEX. R. APP. P. 21.8(c). This appeal followed.

7

## II.    HYBRID REPRESENTATION

On April 16, 2020, appellant's court-appointed appellate counsel filed a brief purporting to raise three "points of error": (1) the trial court erred by failing to hold a hearing on his motion for new trial; (2) because burglary was a lesser-included offense of organized criminal activity, his conviction on both offenses violated his double jeopardy rights and the burglary conviction should be vacated; and (3) "Save and Except the Complaint Raised in Point of Error Number One, Which is Not a Substantive Attack on the Judgment, An Appeal As to Counts II and III of the Indictment Is Frivolous and Without Merit." In his argument regarding "point of error" No. 3, counsel reviewed several potential grounds for appeal of Counts II and III and explained why such grounds would be frivolous. Counsel also filed a "Motion to Withdraw as Appellate Counsel as to the Convictions for Counts II and II [sic] of the Indictment." Counsel sent a letter to appellant explaining that, under *Anders* and related case law, because he "submit[ted] a brief which fails to make a substantive attack on a judgment," appellant "now ha[s] the right to review the record of [his] trial and file any brief which [he] deem[s] necessary." *See Anders v. California*, 386 U.S. 738 (1967); *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978). The State filed a responsive brief, including responses to the two substantive issues raised by counsel, on June 15, 2020.

Appellant later filed a pro se "brief"[5] on February 25, 2021, raising and arguing the following five issues: (1) the evidence was insufficient to support the possession of

---

[5] We note that an appellant's pro se response following the filing of an *Anders* brief "need not comply with the rules of appellate procedure in order to be considered. Rather, the response should identify for the court those issues which the indigent appellant believes the court should consider in deciding whether the case presents any meritorious issues." *In re Schulman*, 252 S.W.3d 403, 409 n.23 (Tex. Crim. App. 2008).

oxycodone conviction; (2) the evidence was insufficient to support the engaging in organized criminal activity conviction; (3) the court erred in determining that Aubry was qualified to give expert testimony; (4) the State violated appellant's due process rights by failing to disclose *Brady* material; and (5) cumulative error warrants reversal. The State filed a second responsive brief, addressing the issues raised and argued in appellant's pro se "brief," on July 15, 2021.

A criminal defendant is not entitled to hybrid representation. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001) ("Appellants are not allowed to have 'hybrid representation' on appeal, in which an appellant and an attorney can present independent points to an appellate court."); *see also United States v. Villafranca*, 844 F.3d 199 (5th Cir. 2016). Thus, ordinarily, a court may ignore pro se filings made by a party who is represented by an attorney. *See Robinson*, 240 S.W.3d at 922. *Anders* procedure is an exception to the general rule, applicable only when appointed counsel determines that any appeal would be frivolous and moves to withdraw for that reason. *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005) (noting that "[u]nder *Anders*, an appellant has a right to review the *Anders* brief that counsel submitted and to respond to it on his own" and the response filed will not constitute hybrid or "dual representation"); *Kelly v. State*, 436 S.W.3d 313, 318 (Tex. Crim. App. 2014) ("Once appellate counsel is appointed to represent an indigent client, his only justification for filing an *Anders* brief is his ethical obligation to avoid burdening the courts with wholly frivolous appeals.").

Here, the brief filed by court-appointed counsel purports to be a merits-based brief as to Count I but an *Anders* brief as to Counts II and III. Counsel asserts that, because a

finding in appellant's favor on his first issue "will not result in the conviction being reversed, but only in an abatement and remand" for a new trial hearing, his first issue therefore is not a "substantive attack" on Counts II and III. Counsel further suggests that when a court-appointed attorney files an appellate brief which argues non-frivolous issues but does not make a "substantive attack on a judgment," the appellant still has the right under *Anders* to review the record and file a pro se response identifying other arguable issues for appeal. Counsel does not refer to any authority supporting this proposition. Counsel also does not cite any authority establishing that, when an appeal is perfected in one cause number comprising multiple counts of conviction, and substantive grounds for reversal are raised on appeal as to one of the counts, counsel may then seek to invoke appellant's rights under *Anders* as to the other counts for which there are no arguable grounds.[6]

In this case, counsel has briefed an issue (Issue No. 2) which, if sustained, would result in the reversal of appellant's felony conviction for burglary. Counsel has also briefed an issue (Issue No. 1) which, if sustained, would result in a new trial hearing during which appellant could potentially produce evidence which may support additional arguable issues for appeal. Counsel points to no authority, and we find none, stating that under these circumstances, *Anders* requires that appellant be given the opportunity to review

---

[6] In *Lopez v. State*, where the appellant was convicted of three offenses, his court-appointed appellate counsel filed an *Anders* brief with respect to two of the convictions but filed a separate brief arguing a non-frivolous issue with respect to the third conviction. Nos. 13-16-00502-CR, 13-16-00503-CR, 13-16-00504-CR, 2017 WL 3634587, at *1–2 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2017, no pet.) (mem. op., not designated for publication). In a consolidated memorandum opinion, we reviewed the merits of the non-frivolous issue raised by counsel and, in accordance with *Anders*, we conducted a full examination of the record to determine whether the appeal as to the other two convictions was wholly frivolous. *See id.* at *3–4. However, in that case, the three judgments of conviction were rendered in separate trial court cause numbers and were appealed in three separate appellate cause numbers. *See id.* Further, counsel in *Lopez* filed two briefs: one invoking *Anders* as to two convictions, and a separate merits-based brief as to the third conviction. *See id.* The instant case, on the other hand, involves a single trial court cause number, a single appellate court cause number, and a single brief purporting to be both an *Anders* brief and a brief on the merits.

the record and submit a pro se response identifying *other* arguable issues. Counsel was appointed to represent appellant on appeal in a single cause number, has diligently reviewed the record and the law, and has provided argument on those issues which he deemed to be non-frivolous. By filing a brief raising arguable issues, counsel has already complied with his ethical duties to appellant (to provide competent, zealous representation) and to this Court (to avoid burdening us with frivolous appeals). *See Kelly*, 436 S.W.3d at 318. Further, because counsel has identified and briefed arguable issues, there is no ethical obligation for counsel to withdraw, and thus, no reason to deviate from the general rule prohibiting hybrid representation. *See id.* ("The purpose of the *Anders* brief is to satisfy the appellate court that the appointed counsel's motion to withdraw is, indeed, based upon a conscientious and thorough review of the law and facts.").[7]

For the foregoing reasons, we do not entertain appellant's pro se "brief" or the State's response thereto. *See Robinson*, 240 S.W.3d at 922. Moreover, we deny counsel's motion to partially withdraw from representation of appellant. We proceed to address the merits of the issues raised and briefed by counsel.

### III.   DISCUSSION

### A.   Motion for New Trial Hearing

By his first issue, appellant contends the trial court erred by failing to hold a hearing on his pro se motion for new trial. The motion alleged: (1) the evidence was insufficient to support the possession of oxycodone or engaging in organized criminal activity convictions; (2) the trial court erred in allowing Aubry's testimony as an expert; (3) a

---

[7] If appellant believes that there are additional non-frivolous issues which were not raised in counsel's brief, he may bring a collateral attack against the judgment, such as a petition for writ of habeas corpus, alleging that his appellate counsel was ineffective. He is not, however, entitled to "file any brief which [he] deem[s] necessary" in the same appeal for which his appointed counsel has already filed a brief.

mistrial should have been granted when it was discovered that "critical evidence obtained by [Aubry] had not been disclosed to the defense"; and (4) his trial counsel provided ineffective assistance.

"The purpose of a hearing on a motion for new trial is to: (1) decide whether the cause shall be retried, and (2) prepare a record for presenting issues on appeal in the event the motion is denied." *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009) (internal quotations omitted). A defendant does not have an "absolute right" to a new trial hearing. *Id.* (citing *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993)). A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Id.* To be entitled to a hearing, the motion for new trial must "raise[] matters which are *not* determinable from the record" and "establish[] the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Id.* at 338–39 (quoting *Reyes*, 849 S.W.2d at 816). It must be "supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim." *Id.* at 339. "The affidavit need not establish a prima facie case"; instead, "it is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim." *Id.* "But affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Id.* (citing *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994)).

"When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion," reversing only when the trial judge's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.*

Appellant argues that he was entitled to a new trial hearing to develop a record in support of the ineffective-assistance-of-counsel grounds raised in his motion for new trial.[8] The motion argued trial counsel was ineffective by: (1) failing to consult with a gang expert; (2) "fail[ing] to object to the sufficiency of the State's witness, [Villarreal,] regarding the alleged controlled substance listed in the indictment"; and (3) failing to "request[] that a scientifically valid chemical analysis be performed to identify and prove the existence of the alleged controlled substance." Appellant argued in the motion that a gang expert "would have confirmed that [appellant] is not in fact a gang member as the indictment alleges." He further argued that, had counsel objected to Villarreal's testimony and asked for a "scientifically valid chemical analysis," "jurors would have reached a different verdict after discovering that the alleged controlled substance did in fact not exist, and had never been sufficiently identified."

Appellant provided his own affidavit in support of his motion. However, specifically as to the ineffective assistance claim, the affidavit merely states: "Defendant contends that [trial counsel] rendered Ineffective Assistance of Counsel." This type of bare, conclusory statement is insufficient to establish appellant's entitlement to a hearing on his motion. *See id.* Even assuming appellant intended for his affidavit to affirm the truth of the matters set forth within the motion itself,[9] we cannot conclude that the facts set forth within the motion established "reasonable grounds" showing that he "could be entitled to relief." *See id.* In particular, appellant has not provided a factual basis to support a finding that

---

[8] Appellant concedes that the other grounds raised in the new trial motion were subject to determination from the existing record and, therefore, did not require a hearing to develop evidence.

[9] The affidavit states: "I, [appellant], hereby attest that the information provided herein this motion [sic] is true and correct."

his trial counsel was constitutionally ineffective so as to warrant the granting of a new trial. *See Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (noting that, to obtain a reversal of a conviction on grounds of ineffective assistance of counsel, "a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding" (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984))). Accordingly, the trial court did not abuse its discretion by failing to hold a hearing on the motion for new trial. Appellant's first issue is overruled.

## B.    Double Jeopardy

By his second issue, appellant contends his multiple convictions for burglary and engaging in organized criminal activity violate the double jeopardy provisions of the United States Constitution and Texas Constitution. *See* U.S. CONST. amend. V, XIV; TEX. CONST. art. I, § 14. Both constitutions prohibit the assessment of multiple punishments for the same offense. *See Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). Appellant argues that, because burglary is a lesser-included offense of engaging in organized criminal activity, conviction on both counts constitutes multiple punishments for the same offense.

"In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008) (citing *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008); *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006)). "Sameness in this context is a matter of

14

legislative intent." *Id.* at 276 (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex. Crim. App. 1992)). Ordinarily, we presume that the Legislature "did not regard two statutorily defined offenses to be the same if 'each provision requires proof of a fact which the other does not.'" *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Even so, "[a]n accused may be punished for two offenses that would be regarded as the same under a *Blockburger* analysis if the Legislature has otherwise made manifest its intention that he should be." *Id.* Therefore, whether the two offenses at issue are the "same" is irrelevant if the Legislature intended to authorize multiple punishments for both. *See Reina v. State*, 940 S.W.2d 770, 775–76 (Tex. App.—Austin 1997, pet. ref'd) ("A court may impose cumulative punishment in a trial for the violation of two statutes, regardless of whether those two statutes proscribe the 'same' conduct under the other two types of double jeopardy prohibitions, if the legislature so intends.").

Penal code § 71.02 states that a person is guilty of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more" of the specific offenses listed in subsection (a) of the statute. TEX. PENAL CODE ANN. § 71.02(a). The list includes burglary. *Id.* § 71.02(a)(1). Thus, appellant is correct that, as charged in this case, burglary is a lesser-included offense of engaging in organized criminal activity. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) ("An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . ."); *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009).

However, § 71.03 of the penal code states that "[i]t is no defense to prosecution under [§] 71.02 that . . . a person has been charged with, acquitted, or convicted of any offense listed in Subsection (a) of Section 71.02 . . . ." TEX. PENAL CODE ANN. § 71.03(3). The Texas Court of Criminal Appeals has determined that, by this statutory provision, "the Legislature has indicated with sufficient clarity its intention that a defendant charged with engaging in organized criminal activity may also be charged (at least in the same proceeding) with the underlying offense and punished for both." *Garza v. State*, 213 S.W.3d 338, 352 (Tex. Crim. App. 2007). Thus, appellant's dual convictions for both organized criminal activity and burglary do not offend his double jeopardy rights. *See id.*; *Reina*, 940 S.W.2d at 776 (concluding that "the simultaneous prosecution of Reina for attempted murder and engaging in organized criminal activity did not violate the double jeopardy provisions of either the federal or state constitution"); *see also Crumpton v. State*, 977 S.W.2d 763, 770 (Tex. App.—Fort Worth 1998, no pet.) (noting that "even if the theft allegation in the organized criminal activity indictment was the same offense for double jeopardy purposes, nothing would preclude the State from prosecuting both the organized criminal activity offense and the theft offense as separate offenses and seeking separate punishments").

Appellant argues that *Garza* is distinguishable because that case did not "involve[] [a] situation[] in which there were convictions for both an offense and a lesser included offense of the first." We disagree. In *Garza*, the appellant was convicted of both (1) capital murder and (2) engaging in organized criminal activity by committing capital murder as a member of a criminal street gang. 213 S.W.3d at 341 & n.1. The former charge was a lesser-included offense of the latter charge under the statutory definition, *see* TEX. CODE

CRIM. PROC. ANN. art. 37.09(1), and the State conceded that the two offenses were the "same" under a *Blockburger* analysis. *Id.* at 351. The court nevertheless concluded that punishment for both offenses was permissible, at least when arising from a single prosecution, because the Legislature intended it. *See id.* at 352.

We overrule appellant's second issue.

### IV. MODIFICATION OF JUDGMENT

We observe that the judgments of conviction for Counts I and II incorrectly state that punishment was assessed by the jury.[10] The record establishes that the trial court assessed punishment. We have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). We modify the judgments for Counts I and II to reflect that punishment was in fact assessed by the trial court.

### V. CONCLUSION

The trial court's judgments are affirmed as modified. *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
16th day of September, 2021.

---

[10] The initial judgment of conviction on Count III also stated that punishment was assessed by the jury; however, a judgment nunc pro tunc was later signed as to that count which correctly stated that punishment was assessed by the court. The record does not contain judgments nunc pro tunc as to Counts I or II.

17